48 CCPA

**CLARK EQUIPMENT COMPANY,**
Appellant,

v.

**BAKER–LULL CORPORATION (Otis Elevator Company, alleged assignee, substituted),** Appellee.

**Patent Appeal No. 6588.**

United States Court of Customs and Patent Appeals.

Feb. 6, 1961.

Rehearing Denied May 5, 1961.

Brown, Jackson, Boettcher & Dienner, Chicago, Ill. (John A. Dienner, Jr., F. Vern Lahart, Chicago, Ill., and Kenneth C. Witt, Buchanan, Mich., of counsel), for appellant.

Joseph L. Sharon, New York City, for appellee.

Before WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

SMITH, Judge.

Appellee-applicant's predecessor filed application No. 660,915 on February 11, 1954, for registration of the mark Yardloader for use on vehicle-mounted material loaders, known as fork trucks. Appellant-opposer opposed registration, charging that the use of that mark by applicant would result in confusion, mistake and deception of purchasers as to

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of* *Judge O'CONNELL,* pursuant to provisions of Section 294(d), Title 28, United States Code.

the source or origin of the goods in view of opposer's prior use of the marks Carloader, Trucloader, Planeloader and Yardlift on similar fork trucks. It is agreed that for the purposes of this appeal the goods involved are identical.

The examiner of interferences found such similarity between the marks Yardloader and Yardlift "as to sound, appearance and significance" that their contemporaneous use would be "likely to cause confusion or mistake or to deceive purchasers," and sustained the opposition. The Assistant Commissioner reversed the decision of the examiner and dismissed the opposition. 121 USPQ 147. Opposer's request for reconsideration was denied, and it now appeals to this court.

■ The sole issue is whether use of Yardloader for fork trucks would be likely to cause confusion or mistake or deceive purchasers as to their source or origin. Star Watch Case Company v. Gebruder Junghans, A.G., 267 F.2d 950, 46 CCPA 929, 931.

The exhibits before us indicate that opposer manufactures many types of industrial trucks, tractors, dump trucks and fork trucks, and among the latter are those sold under the marks Carloader,[1] Trucloader,[2] Planeloader and Yardlift.[3] The fork trucks vary from one another in capacity, size and power plant. Applicant's predecessors used the mark Hy-Lift[4] on a type of fork truck, the mark Universal Loader on a fork lift, operated on the front of a tractor, the mark Shoveloader[5] on a tractor with a hydraulically operated scoop or bucket on the front, and the mark Traveloader[6] on a material loader which utilized a fork lift operating from the side of the vehicle.

■ There is no question but that the marks have a high degree of similarity as to appearance and suggestion. These factors alone may not be sufficient, where, as here, the similarity of appearance and suggestion arises from purely descriptive aspects of the marks. Thus the word "Yard," the only word common to both marks is but descriptive of the area in which the "loader" or the "lift" is to be used. The terms "loader" and "lift," while clearly distinctive as to sound, appearance and meaning are also descriptive of the units to which the marks are applied.

When we pass to a consideration of the degree of care likely to be exercised by purchasers, we think the goods are of such a type that a high degree of care will be exercised by the purchasers. The record before us consists of a stipulation of facts and supporting exhibits agreed to be relevant to the issues. Among the exhibits are a number of photostats of purchase orders for opposer's fork trucks. These orders indicate that the Yardlift with a capacity of two thousand pounds is priced at approximately thirty-eight hundred dollars, and the Yardlift with a four thousand pound capacity sells for about five thousand dollars. The advertisements entered as exhibits indicate that opposer's Yardlift fork trucks vary in capacity from two thousand to sixteen thousand pounds. Purchasers order these fork trucks according to specifications as to capacity, size of forks, upright height, and so forth to suit their particular needs. There is no similar information of record as to applicant's Yardloader, except that the advertisements indicate it to be similar to opposer's smaller Yardlift trucks.

1. Reg. No. 366,295, issued April 4, 1939; Reg. No. 600,155, issued Dec. 28, 1954; Reg. No. 655,677, issued Aug. 12, 1958.

2. Reg. No. 208,957, issued Sept. 5, 1944; Reg. No. 600,156, issued Dec. 28, 1954; and Reg. No. 665,347, issued Aug. 5, 1958.

3. Reg. No. 586,904, issued Mar. 16, 1954.

4. Reg. No. 169,206, issued to a predecessor June 12, 1923, renewed and published under § 12(c) on May 2, 1950 by another predecessor.

5. Reg. No. 563,490, issued to a predecessor on Aug. 26, 1952.

6. Reg. No. 571,427, issued to a predecessor on Mar. 3, 1953.

The purchasers of these fork trucks are industries of such size and type as would be able profitably to own such vehicles. The vehicles are sufficiently expensive as to require careful planning by any prospective buyer prior to the actual purchase. Fork trucks are ordered in specific sizes, capacities, and operating characteristics to suit the specific needs of the purchaser. These machines are capital goods, hard goods of relatively slow depreciation, as distinguished from supplies or other quick turn-over items. We think, therefore, that the record shows that we are here dealing with "discriminating purchasers." The issue as to likelihood of confusion must, therefore, be resolved on this basis.

Opposer asserts, as one of its grounds for charging that purchaser confusion as to the source or origin of their respective goods is likely to result from applicant's use of Yardloader, that the public would expect opposer to use that mark on its goods. That argument is based upon opposer's prior use of the word "loader" as a part of its other marks.

Both parties have frequently used the word "loader" in their respective marks, as descriptive of the function of the machines involved. No word more aptly describes the primary use of these machines than "loader." Aside from questions as to opposer's right to exclude others from the ordinary use of so common a word, in view of applicant's similar prior use of the same word, we are unable to see why the public would be any more likely to anticipate opposer's use than applicant's use. Lauritzen & Co., Inc. v. Borden Co., 239 F.2d 405, 44 CCPA 720.

It is also evident that there would be no likelihood of deception or confusion of purchasers as to the source or origin of the goods marked "Planeloader," "Trucloader," or "Carloader," with the goods marked "Yardloader." The marks neither sound alike nor look alike. As indicated above, the suffix "Loader" is a common word descriptive of the use of the machines. The various prefixes are equally common words of clear, precise and distinct meanings.

The marks remaining, Yardloader and Yardlift share the same word as a prefix. That word is used to express its common denotative meaning, viz., that the machines are primarily useful in a yard.

The suffixes are likewise common words used to convey their common meaning. The word "loader" is descriptive of the use of the machine, and the word "lift" is denominative of the machine itself. Purchasers are more likely to associate either of the marks with the equipment irrespective of the manufacturer, than they are to associate the words with opposer, applicant or anyone else. To the extent that purchasers relate the mark to the type of equipment rather than the source of the equipment, the likelihood that they will confuse appellant and appellee as sources of the various fork trucks because of the marks is decreased. Cf. Smith v. Tobacco By-Products & Chemical Corp., 243 F.2d 188, 44 CCPA 880, 882; Shoe Corporation of America v. Juvenile Shoe Corp. of America, 266 F.2d 793, 46 CCPA 868, 872; Sure-Fit Products Co. v. Saltzson Drapery Co., 254 F.2d 158, 45 CCPA 856; National Motor Bearing Co., Inc. v. James-Pond-Clark, 266 F.2d 779, 46 CCPA 877, 882.

The marks Yardloader and Yardlift differ in meaning, appearance and sound. While those differences are not great, on the facts of record we think the differences are of dispositive legal significance. In view of the nature of the goods, the cost of the goods, the fact that fork trucks are purchased by discriminating purchasers, National Motor Bearing Co., Inc. v. James-Pond-Clark, 266 F.2d 799, supra, 46 CCPA 882, and bearing in mind that the marks Yardlift and Yardloader are so suggestive as to have little trademark significance, Sure-Fit Products Co. v. Saltzson Drapery Co., supra, and that over the last two decades the parties or their predecessors have used marks of equal simi-

larity as those here involved, we hold that there is no likelihood of confusion or deception of purchasers as to the source or origin of the goods resulting from applicant's use of the mark Yardloader.

 Opposer has raised two other contentions in support of its opposition to registration. First, it asserts that applicant did not use its mark until long after filing of this application. That contention is based, not upon any evidence introduced by opposer, but upon the alleged failure of applicant to prove its use. Opposer did not include that contention in its notice of opposition, but raised it for the first time in its argument before the examiner, who refused to consider it. The Assistant Commissioner likewise refused to consider it. The only evidence of record here is the stipulation in paragraph 8 of which appellant stipulated the first use as claimed by applicant. Were it not for opposer's considerable reliance on this point we would not mention it here. In view of the stipulation, opposer will not be heard here to argue that applicant's stipulated use did not occur on the ground applicant did not prove it. Huntington Laboratories, Inc. v. Onyx Oil & Chemical Co., 165 F.2d 454, 35 CCPA 819, 820; Cf. Societe Anonyme Marne et Champagne v. Myers, 250 F.2d 374, 45 CCPA 755, 759; Hygrade Sylvania Corp. v. Sontag Chain Stores Co., Ltd., 125 F.2d 389, 29 CCPA 799, 804.

The second contention raised appeared in the notice of opposition but both the examiner and the Assistant Commissioner held it to be an ex parte matter and refused to consider it. Opposer argues that applicant does not own the trademark Yardloader because its assignor's assignor failed in its attempt to assign the mark. Opposer suggests that the Chairman of the assignor's Board of Trustees, who signed the assignment, was not authorized to transfer its property. Since applicant is the successor to the business and good will of the original applicant, it must be re-garded as the owner of the mark. Hylo Co., Inc. v. Jean Patou, Inc., 215 F.2d 282, 42 CCPA 723, 726. Since opposer has failed to establish that it will be injured by registration of the mark Yardloader, we will not consider the possible rights of some third party in that mark. Revere Paint Co. v. Twentieth Century Chemical Co., 150 F.2d 135, 32 CCPA 1096, 1101, 1102.

The decision of the Assistant Commissioner is affirmed.

Affirmed.