SCIENTIFIC APPLICATIONS, INC. and Atlanta Homefoamers, Inc.

v.

ENERGY CONSERVATION CORPORATION OF AMERICA, d/b/a the Homefoamers of Georgia.

Civ. A. No. 77–1281A.

United States District Court, N. D. Georgia, Atlanta Division.

Aug. 26, 1977.

Steven J. Strelzik, Johnston & McCarter, George M. Hopkins, Newton, Hopkins, & Orsby, Atlanta, Ga., for plaintiffs.

Mark Weber, Resnick & Lawson, Lawrence D. Kupferman, Julius Alembik, Alembik & Kupferman, Atlanta, Ga., for defendant.

## ORDER

RICHARD C. FREEMAN, District Judge.

This is an action for trademark infringement[1] under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, brought by Scientific Applications, Inc. [hereinafter "SAI"], an Iowa corporation and by its licensee, Atlanta Homefoamers, a Georgia corporation against The Homefoamers of Georgia, a Georgia corporation. All parties provide a service of installing building insulation of urea formaldehyde foam. The plaintiffs seek declaratory and injunctive relief and damages. The jurisdiction of the court is invoked pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338. The action is presently before the court on plaintiffs' motion for a temporary restraining order[2] or a preliminary injunction to prevent defendant: (1) from using SAI's service mark or a confusingly similar equivalent; (2) from listing defendant's service in the White and Yellow Pages and with directory assistance of the Southern Bell Telephone and Telegraph Company under such mark; (3) from selling its service of building insulation under such mark; and (4) from otherwise infringing upon plaintiffs' mark or otherwise unfairly competing with plaintiffs. Before proceeding to the merits of the plaintiffs' motion, a brief review of the facts and party allegations is warranted.

Plaintiff SAI has been engaged in the service of installing building insulation since December, 1972, and has provided that service under the service mark or name The Homefoamers since December 8, 1974. On February 3, 1976, the United States Patent and Trademark Office issued to plaintiff SAI Service Mark Registration No. 1,032,531 on the principal register for The Homefoamers and design.[3] SAI alleges continued ownership of said registration and maintains that the registration is in full force and effect. SAI is also the holder of a state registration for The Homefoamers and Design, certified by the Secretary of the State of Georgia on August 19, 1977.

SAI has licensed 400–500 dealers across the country to use SAI's mark. Eight of these dealers are located in the Southeast: three in Georgia, three in Florida, and two in Alabama. Plaintiff Atlanta Homefoamers was incorporated as an SAI dealer on April 25, 1977, under the laws of the State of Georgia. Plaintiff SAI represents that its gross sales of urea formaldehyde foam and related services approximate $9,385,487.00 and that the gross income of its licensed dealers approximates $38,000,000.00.

SAI supports an advertising campaign which includes commercials on national television broadcasts, *e. g.*, the NBC Today and Tonight programs, and advertisements in national periodicals, *e. g., Business Week, Better Homes and Gardens, Mechanic Illustrated,* and *RSI* (a trade publication). Plaintiff asserts that a total of $613,113.00 was spent on advertising during the last fiscal year and that over $1,000,000.00 is projected for this year. SAI contends that its national advertising has reached the Atlanta market.

---

1. The plaintiffs have brought an action of seven counts: federal trademark infringement, federal false designation or description, common law unfair competition, inequitable conduct, state antidilution violation, uniform deceptive trade practices violation, and Fair Business Practices Act violation. Only the federal trademark infringement count will be treated in consideration of plaintiffs' motion for a preliminary injunction.

2. The plaintiffs have admitted that the time limitations of a temporary restraining order will not allow the relief they seek. Therefore, their motion will be considered as one seeking only a preliminary injunction.

3. The service mark The Homefoamers appears on two horizontal lines written in thick, rounded lettering and accompanied by two jovial workmen holding a hose and standing on a mound of foam.

The defendant began its operations in Georgia in March, 1977, and was incorporated under the laws of the State of Georgia on June 13, 1977. Defendant holds a certificate from the Secretary of the State of Georgia, granted June 7, 1977, for the use of the name Homefoamers of Georgia, Inc.

The defendant reports that its name was selected after viewing promotional materials of Isoschaum Foam Products, a supplier of insulating foam. Defendant asked Isoschaum for permission to use the term "Homefoamers" in its name and Isoschaum responded that it knew of no reason why defendant could not use the term. On July 20, 1977, the president of SAI notified and ordered Isoschaum upon the termination of their business relationship that authorization for Isoschaum's use of SAI's registered mark was revoked as of that date. Isoschaum was requested to forward to SAI the names of any other users of the mark which Isoschaum had authorized in order to prevent any further unauthorized use of SAI's registered mark. Plaintiff represents that Isoschaum acquiesced to its order of July 20, 1977.

A total of nearly $40,000.00 has been expended by the defendant for advertising and in setting up its service in Atlanta. Defendant's advertising has focused on the Atlanta market only and has included local television commercials, newspaper ads, and telephone directory listings.

The plaintiff SAI notified the Homefoamers of Georgia by letter dated June 30, 1977, and demanded that the defendant cease and desist using plaintiffs' registered service mark in any manner whatsoever. The defendant continued its advertising and sales of the home insulating service under the name of The Homefoamers of Georgia. On August 4, 1977, the plaintiffs filed the instant action. Defendant responded and has entered a five count counterclaim.[4] The instant motion for a preliminary injunction was prompted by a letter

dated August 12, 1977, to plaintiffs' counsel from an attorney for the Southern Bell Telephone and Telegraph Company explaining that because entries for the Atlanta Yellow Pages listings would be closed on August 26, 1977, and because the controversy persisted between the plaintiffs and the defendant over the right to use the term Homefoamers, Southern Bell had decided to list both parties, and not one to the exclusion of the other, in an attempt to avoid incurring any possible liability.

The traditional prerequisites of a preliminary injunction provide that the burden is on the plaintiffs to demonstrate: (1) a substantial likelihood of plaintiffs' success at a trial on the merits; (2) an immediate and real threat of irreparable injury to plaintiffs; (3) that the imminent harm to plaintiffs is greater than the harm to defendant if an injunction is imposed; and (4) that granting the injunction is in the public interest. *Morgan v. Fletcher*, 518 F.2d 236, 239 (5th Cir. 1975); *Carling Brewing Co. v. Philip Morris, Inc.*, 277 F.Supp. 326, 334 (N.D.Ga.1967). These prerequisites will be reviewed *seriatim* by the court.

## LIKELIHOOD OF SUCCESS ON THE MERITS

SAI has held Registered Service Mark No. 1,032,531 for The Homefoamers and Design since February 3, 1976. The Lanham Act provides:

> A certificate of registration of a mark upon the principal register . . . shall be prima facie evidence of the validity of the registration, registrant's ownership of the mark, and of registrant's exclusive rights to use the mark in commerce in connection with the goods or services specified in the certificate, subject to any conditions and limitations stated therein.

15 U.S.C. § 1057(b). Plaintiffs' mark is entered on the principal register and bears no conditions or limitations.

---

4. The defendant counterclaims for: (1) cancellation of plaintiffs' service mark registration, 15 U.S.C. § 1072; (2) defendant's common law trademark rights; (3) defendant's state law trademark rights, Ga.Code § 106–115; (4) recovery under the state deceptive trade practices law, Ga.Code § 106–702; (5) recovery from plaintiffs' for their restraint of trade.

To prove infringement the plaintiffs must show the likelihood of confusion of some accused mark with their registered mark, 15 U.S.C. § 1114(1)(a). Actual confusion is the most persuasive evidence of likelihood of present and future consumer confusion. *World Carpets, Inc. v. Dick Littrell's New World Carpets,* 438 F.2d 482, 489 (5th Cir. 1971); *Professional Golfers Association v. Bankers Life & Casualty Co.,* 514 F.2d 665, 670 (5th Cir. 1975). The affidavit of plaintiff Atlanta Homefoamers' president, David Decker, reports the confusion of certain customers, including Mrs. Tidwell and Ms. Williams, who sought the defendant's service but telephoned plaintiffs' company by mistake. The defendant has asserted the lack of similarity between its name and plaintiffs' registered mark and design. However, the Fifth Circuit Court of Appeals instructs:

that while very little proof of actual confusion would be necessary to prove the likelihood of confusion, an almost overwhelming amount of proof would be necessary to refute such proof.

*World Carpets, Inc., supra* at 489.

The defendant thereupon contends that it is entitled to the rights and benefits of the term The Homefoamers because: (1) the defendant exercised prior use of the mark in the Atlanta area; (2) the defendant was unaware of plaintiffs' mark at the time of defendant's choice of a name; and (3) the plaintiffs' mark is not registrable.

Defendant's first contention of priority of use in the trading area emphasizes the specificity of defendant's service and advertising in the Atlanta metropolitan area as contrasted with plaintiffs' scattered dealerships and national advertising. Defendant contends that plaintiffs' advertising "only, at most, peripherally touched upon the At-

lanta market. . . ." and that defendant was contracting for foam insulation installation one month before the plaintiff Atlanta Homefoamers was incorporated in Georgia. Defendant asserts that this priority of local use entitles it to use the mark within its established "reputation zone", the Atlanta trading area, and relies on *J. A. Dougherty's Sons v. Kasko Distillers Products Corp.,* 35 F.Supp. 561 (E.D.Pa.1940) and the District Court opinion in *Wiener King, Inc. v. Wiener King Corp.,* 407 F.Supp. 1274 (D.N.J.), *reversed and remanded,* 546 F.2d 421 (3d Cir. 1976), *cert. denied,* 430 U.S. 916, 97 S.Ct. 1328, 51 L.Ed.2d 594 (1977).

Defendant's claim of entitlement does not state the present law of trademark rights in this circuit and its reliance on the District Court decisions is misplaced.[5] The decision in *J. A. Dougherty's Sons, supra,* antedates the Lanham Act of 1946. The language and legislative history[6] of the Act reflect a congressional intent "to provide nationwide protection for expanding businesses." *John R. Thompson Co. v. Holloway,* 366 F.2d 108, 115 (5th Cir. 1966).

The Lanham Act provides national constructive notice of the registration, 15 U.S.C. § 1072, and creates rights in the national registrant superior to any user who adopts a conflicting or confusingly similar mark after the date of the registration, 15 U.S.C. § 1115. There may be no conflict or likelihood of customer confusion about products or services when the parties trade in separate market areas, but once the registrant demonstrates the likelihood or fact of expansion into the junior user's area, the junior user must give way to the superior rights of the registrant. *Howard Stores Corp. v. Howard Clothing, Inc.,* 308 F.Supp. 70, 75 (N.D.Ga.1969); *Dawn Donut Co. v.*

5. The court is offered only minimal guidance by the District Court decision in *Wiener King, Inc.* after the unpublished reversal and remand of the case by the Third Circuit Court of Appeals. In any event, the facts of *Wiener King, Inc.* of a user of a mark ten years previous to its registration by another, distinguish that case from the instant action.

6. The legislative history of the Lanham Act and its amendments is collected or reviewed in: 1946 U.S.Code Cong. Service, p. 1274; 1962 U.S.Code Cong. & Admin.News, p. 2844; 1974 U.S.Code Cong. & Admin.News, p. 7113, *John R. Thompson Co. v. Holloway,* 366 F.2d 108, 115 n. 11 (5th Cir. 1966), and *HMH Publishing Co. v. Brincat,* 504 F.2d 713, 716 n. 7 (9th Cir. 1974).

Hart's Food Stores, Inc., 267 F.2d 358, 362–63 (2d Cir. 1959). The national registrant may even be entitled to enjoin a local user without any actual movement into the area if the registrant can show that its reputation is being affected and its mark is being confused. Beef/Eater Restaurants, Inc. v. James Burrough Ltd., 398 F.2d 637 (5th Cir. 1968); Tisch Hotels, Inc. v. Atlanta Americana Motor Hotel Corp., 254 F.Supp. 743 (N.D.Ga.1966).

The defendant adopted Homefoamers of Georgia as its service mark more than one year after the plaintiffs' registration was issued for The Homefoamers and therefore the defendant is a junior user of the mark. Plaintiffs claim penetration through national advertising of the Atlanta market and assert actual entry in June, 1977, into the Atlanta area with the incorporation of their local licensee. The likelihood and fact of consumer confusion is present and trademark infringement by the junior user is established.

■ It is well understood that the ownership of the mark is not obtained by registration but is only maintained through use. Plaintiffs assert continuous use of the service mark from December, 1974 and relate a campaign to police its exclusivity since the registration in February, 1976. The defendant has shown no abeyance of the registrant's use. Plaintiffs' notices to defendant on June 30, 1977, and to Isoschaum Foam Products on July 20, 1977, to cease and desist use of the mark and plaintiffs' filing of this action demonstrate a vigilance in protection of their Lanham Act rights. Tisch Hotels, Inc. v. Americana Inn, Inc., 350 F.2d 609, 615 (7th Cir. 1965). Cf. J. A. Dougherty's Sons, supra, at 564.

Plaintiffs' early registration of the service mark in 1976 has granted them superior rights to the defendant, a junior user, who must give way upon the actual entry of plaintiffs into the Atlanta area. Any earlier ripening of plaintiffs' superior rights in the Atlanta area will depend upon plaintiffs' proof of advertising penetration and of establishment of a reputation zone in this trading area.

■ The second contention raised by defendant asserts defendant's unawareness of plaintiffs' registered mark when defendant innocently selected a service name. Plaintiffs allege no lack of good faith on the part of defendant; lack of good faith is no longer a necessary proof for granting an injunction for trademark infringement. Tisch Hotels, Inc. v. Americana Inn, Inc., 350 F.2d 609, 617 (7th Cir. 1965); Howard Stores Corp., supra at 73.

■ The constructive notice provision of the Lanham Act, 15 U.S.C. § 1072, eliminates the defense of good faith appropriation of another's registered mark. American Foods, Inc. v. Golden Flake, Inc., 312 F.2d 619, 626 (5th Cir. 1963); Howard Stores Corp., supra at 73. It has been held that a newcomer to a business bears a duty in selection of a service or trade name "to keep far enough away to avoid all possible confusion." Northam Warren Corp. v. Universal Cosmetic Co., 18 F.2d 774, 775 (7th Cir. 1927), quoted with approval in Corn Cabin Co. v. Givens, 134 U.S.P.Q. 219 (N.D. Ga.1962). Union Carbide Corp. v. Ever-Ready, Inc., 531 F.2d 366, 382 (7th Cir.), cert. denied, 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976). Defendant's application to the Georgia Secretary of State for a certificate of name, issued April 14, 1977, may satisfy any affirmative duty demanded of the defendant but it offers no defense to plaintiffs' charges of service mark infringement.

■ Defendant received actual notice of infringement of plaintiffs' registered mark in plaintiffs' letter of June 30, 1977, yet defendant continued its advertisements and offer of service under the trade name The Homefoamers of Georgia. Continued use of a registered mark after actual notice of infringement has been interpreted as an intent to deceive. Standard Oil Co. v. Standard Oil Co., 252 F.2d 65, 76 (10th Cir. 1958); Kelly Girl Service v. Roberts, 243 F.Supp. 225, 228 (E.D.La.1965). Therefore, defendant's assertion of good faith as a defense is unavailing and even suspect after actual notice.

Defendant's third contention argues that plaintiffs' mark is not valid because The Homefoamers is a generic or merely · descriptive term which is not registrable under the Lanham Act. The hierarchy of marks, reflecting the availability of protection accorded by the Lanham Act, can be set out as follows: (1) fanciful (*e. g.,* "Kodak") or arbitrary (*e. g.,* "Ivory" for soap) marks are registrable, 15 U.S.C. § 1052; (2) suggestive (*e. g.,* "Stronghold" for nails) marks are registrable;[7] (3) descriptive (identifies characteristics or qualities such as, color, odor, function, dimensions, ingredients) marks are registrable only upon proof of an acquired secondary meaning, 15 U.S.C. § 1052(e)(f); and (4) generic (identifies nature or class cf articles or services) marks are · not registrable, 15 U.S.C. § 1064(c). *American Heritage Life Insurance Co. v. Life Insurance Co.,* 494 F.2d 3 (5th Cir. 1974); *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4 (2d Cir. 1976). Plaintiffs argue that their mark is fanciful or arbitrary or suggestive. Plaintiffs contend further that if their mark is deemed merely descriptive, it has nevertheless acquired a secondary meaning. The court can summarily eliminate plaintiffs' contentions of "arbitrary or fanciful" and defendant's contentions of "generic" as unlikely categories for plaintiffs' mark. The court limits consideration to the categories of "suggestive" and "descriptive."

■ Although the threshold question in any infringement action is whether the mark is registrable, plaintiffs' registration enjoys a strong presumpion[8] of validity, 15 U.S.C. §§ 1052(e), 1057(b). *American Heritage Life Insurance Co., supra* at 10; *Union Carbide Corp., supra* at 378; *Aluminum Fabricating Co. v. Season-All Window Corp.,* 259 F.2d 314, 316–17 (2d Cir. 1958). The presumption of validity of a registered mark shifts the burden of proof to the challenger of the trade or service mark. Congress has entrusted the preliminary decision on registrability to the United States Patent and Trademark Office, 15 U.S.C. § 1051 *et seq.* The court should not overrule the Patent Office decision unless the defendant can argue persuasively, not merely with equal force, that the plaintiffs' mark was inappropriately categorized and is thus ineligible for protection. *Season-All Window Corp., supra* at 316.

The presumption of validity of a registration restated presumes a questionable or borderline trade or service mark to be suggestive rather than merely descriptive. *Abercrombie & Fitch Co., supra* at 11. The defendant argues The Homefoamers is merely descriptive because: (1) the mark is simply a combination of two common English words; (2) the term is recognized by a distributor of insulating foam as common usage within the trade; and (3) the term lacks distinctiveness that SAI's own licensee's recognize by adding words to individualize their services.

■ Combinations of common English words may qualify as registrable marks if the juxtaposition of the words or their application to a particular product creates the quality of inventiveness or distinctiveness necessary under the Lanham Act. *Season-All Window Corp., supra* at 316. Courts have upheld the following service marks without proof of a secondary meaning: Yardloader, *Clark Equipment Co. v. Baker-Lull Corp.,* 288 F.2d 926, 48 C.C.P.A. 865 (1961); Manpower, *Manpower, Inc. v. Womenpower, Inc.,* 288 F.Supp. 132 (D.P.R.1968), and Drillmaster, *Application of Dirzius,* 311 F.2d 825 (Cust. & Pat.App.1963).

7. The "suggestive" mark category has been created by the courts and reflects an appreciation of the vast differences in protection accorded to and the lack of bright line demarcations between the statutory categories. *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (2d Cir. 1976).

8. One court has held that a registration, absent any proof of fraud, is conclusive evidence of a registrant's rights. *Travelodge Corp. v. Siragusa,* 228 F.Supp. 238 (N.D.Ala.1964), *aff'd,* 352 F.2d 516 (5th Cir. 1965). The infringement in *Siragusa* was found to be intentional and harmful to the registrant's reputation as a national motel chain, which may account for the court's forceful choice of a standard of validity.

■ An opinion that The Homefoamers is common usage by someone working in the trade is only helpful insofar as it offers a survey of the consuming public. *See Union Carbide Corp., supra* at 381. The test of suggestiveness of a mark and the test of likelihood of confusion should be measured by the opinions of the purchasing public. *Blisscraft of Hollywood v. United Plastics Co.,* 294 F.2d 694, 699 (2d Cir. 1961); *Holiday Inns, Inc. v. Holiday Inn,* 364 F.Supp. 775 (D.S.C.) *aff'd,* 498 F.2d 1397 (4th Cir. 1973). If the mark is suggestive rather than merely descriptive, the consumer will have to exercise some imagination to connect it to the service plaintiffs offer. *Union Carbide Corp., supra,* at 377; A. Seidel, S. Dalroff, & E. Gonda, *Trademark Law and Practice,* § 4.06 at 77 (1963). The fact that plaintiff SAI's licensees have added words to the service mark to identify their particular establishments, *e. g.,* The Atlanta Homefoamers, The Happy Homefoamers, does not necessarily imply that the service mark is not suggestive or sufficiently distinctive to be registrable. In all, defendant's arguments do not satisfy the heavy burden necessary to overcome the presumption that the registration is valid and the presumption that the service mark is suggestive rather than merely descriptive. Without more, the decision of the United States Patent Office may not be overruled.

■ The plaintiffs have argued that even if the service mark is termed "descriptive", it has acquired a secondary meaning which identifies The Homefoamers installation of insulation as a service offered by a single provider, the plaintiffs. *American Heritage Life Insurance Co., supra,* at 13. If a descriptive service mark has acquired a secondary meaning, it is entitled to the Lanham Act's protections, 15 U.S.C. § 1052(e)(1), (f). Plaintiffs have the burden of proving a secondary meaning and that burden is substantial. *Id.* The court cannot conclude that plaintiffs' burden has been satisfied by plaintiffs' report of advertising expenditures. Advertising expenditures are only one factor in the court's consideration of whether a secondary meaning has been established. *Union Carbide Corp., supra,* at 380.

■ Similarly, the court rejects the defendant's assertion that the term may have been registrable when it was first used by plaintiffs but has become generic over the past three years. Such a shift in distinctiveness of the term can only occur over many years and with wide-spread usage. The term The Homefoamers does not yet occupy a place in everyday vocabulary similar to: "aspirin", "escalator", "cellophane", or "thermos"; which have undergone such an evolution.

These additional arguments do not "put [any]thing more into the scales" upon the defendant's side and the balance still favors the validity of plaintiffs' registered mark. *Season-All Window Corp., supra,* at 316. In sum, the plaintiffs have shown a substantial likelihood of success upon the merits.

## IMMEDIATE AND IRREPARABLE HARM TO PLAINTIFFS

The harm of trademark infringement contemplated by the Lanham Act is the likelihood of consumer confusion, 15 U.S.C. § 1051, *et seq.* The plaintiffs claim actual consumer confusion has already occurred and that it presents the most persuasive evidence of the future likelihood of purchaser confusion and mistake. *World Carpets, supra,* at 489. The plaintiffs have spent in the past and have budgeted for the future, thousands of dollars for advertising to promote its service and to foster recognition by the public. The home insulation season will reach a predictable peak in the next few weeks and the plaintiffs will be severely harmed if the confusion continues. The listings of the Atlanta Yellow and White Pages close on August 26, 1977, and Southern Bell has decided to list both the plaintiffs' and the defendant's services to avoid any future liability on the part of the telephone company.

The plaintiffs have demonstrated the threat and fact of immediate and irreparable harm to their business investments and to their reputation. The court, however, is reminded that:

[t]he fact that the plaintiff will, as a practical matter, probably be unable to muster any acceptable proofs as to the measure of damages that it may have sustained serves to highlight the manner wherein *the infringement of a trademark is, by its very nature, an activity which causes irreparable harm*—irreparable in the sense that no final decree of a court can adequately compensate a plaintiff for the confusion that has already occurred. [Emphasis supplied]

*Carling Brewing Co. v. Philip Morris, Inc.,* 277 F.Supp. 326, 335 (N.D.Ga.1967).

## HARM TO DEFENDANT

The threatened immediate and irreparable harm to plaintiffs without an injunction must be weighed against the harm to be occasioned by the defendant with an injunction. *Morgan v. Fletcher, supra* at 239; *Carling Brewing Co., supra* at 334. The defendant anticipates that "the corporation will suffer irreparable damage due to loss of good will and name recognition, lost advertising, [and] restructuring of the business under a new and unrecognizable name." The court is not unsympathetic to the plight of the defendant and recognizes its substantial interest in preserving its reputation and business prospects. However, a "large expenditure of money does not of itself create legally protectable rights. . . ." in a service mark. *Smith v. Chanel, Inc.,* 402 F.2d 562, 568 (9th Cir. 1968). The fact of defendant's investments will not preclude the court's granting appropriate and necessary equitable relief. *Tisch Hotels, Inc. v. Atlanta Americana Motor Hotel Corp.,* 254 F.Supp. 743, 750 (N.D.Ga. 1966).

The defendant claims the plaintiffs have delayed in asserting their rights to the detriment of defendant and should not now be allowed to enforce their service mark. The court finds, on the contrary, that the plaintiffs have been diligent in policing their Lanham Act rights.[9]

In addition, the defendant argues that a preliminary injunction should only issue to preserve the status quo and in this instance it would upset the present positions of the plaintiffs and defendant. Although a preliminary injunction can have the effect of preserving the status quo, a court is not limited to this circumstance and may issue a preliminary injunction when equity requires. The court concludes that the threatened and present harm to the plaintiffs of trademark infringement outweighs the prospective harm to the defendant.

## THE PUBLIC INTEREST

The final prerequisite to preliminary injunctive relief questions where the public interest lies. The Lanham Act contemplates the protection of the purchasing public. Although one purpose of the Act is to protect the interests of nationally expanding businesses, *John R. Thompson Co., supra,* at 115, another purpose is to protect consumers from being misled or confused as to the identity of goods or services and their respective providers or suppliers. *Amp, Inc. v. Foy,* 540 F.2d 1181, 1185 (4th Cir. 1976); *HMH Publishing Co., supra* at

---

**9.** The following chronology underlies the court's finding:

March, 1977 — the defendant began offering its service;

June 7, 1977 — the defendant was issued a state certificate for the name HOMEFOAMERS OF GEORGIA, INC.;

June 13, 1977 — the defendant was incorporated;

June 30, 1977 — the plaintiffs notified defendant to cease and desist its alleged infringement of plaintiffs' registered mark;

July 20, 1977 — the plaintiffs notified Isoschaum Foam Products to cease its use of plaintiffs' mark and to forward names of any known unauthorized users;

August 4, 1977 — the plaintiffs filed this action;

August 12, 1977 — Southern Bell notified the plaintiffs and defendant of its intention to list both services in the Yellow and White Pages of the Atlanta telephone directory; and

August 18, 1977 — the plaintiffs filed the instant motion for a preliminary injunction.

716. The public interest, therefore, is found to be served by the grant of a preliminary injunction when, as here, it prevents further trademark infringement and resulting consumer confusion.

■ Accordingly, the plaintiffs have satisfied all the prerequisites of a preliminary injunction. The plaintiffs' motion for a preliminary injunctive relief pending a determination upon the merits at trial is hereby GRANTED.

The defendant is preliminary ENJOINED:

(1) from using in any manner plaintiffs' registered service mark The Homefoamers or any confusingly similar mark such as, The Homefoamers of Georgia;

(2) from advertising or selling the service of installing building insulation under the plaintiffs' registered service mark The Homefoamers or any confusingly similar mark such as The Homefoamers of Georgia;

(3) from listing its service in the White or Yellow Pages and with directory assistance of the Southern Bell Telephone and Telegraph Company under the plaintiffs' service mark The Homefoamers or any confusingly similar mark such as, The Homefoamers of Georgia; and (4) from otherwise infringing upon plaintiffs' registered service mark The Homefoamers.

The plaintiffs are ordered to file a bond herein in the sum of $5,000.00 for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined.

IT IS SO ORDERED, this 26th day of August, 1977.