**BURKE–PARSONS–BOWLBY CORPO-
RATION, Plaintiff–Appellant,**

v.

**APPALACHIAN LOG HOMES, INC.,
Defendant–Appellee.**

No. 88–5025.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 13, 1988.

Decided April 5, 1989.

Rehearing and Rehearing En Banc
Denied May 22, 1989.

---

Cecilia S. Lambert (argued), David E. Rodgers, Kramer, Rayson, McVeigh, Leake & Rodgers, Knoxville, Tenn., for Burke–Parsons–Bowlby Corp.

W.P. Boone Dougherty (argued), Harwell & Nichols, Knoxville, Tenn., for Appalachian Log Homes, Inc.

Before KRUPANSKY and GUY,
Circuit Judges and MEREDITH,
District Judge.*

MEREDITH, District Judge.

On November 30, 1987, the Honorable Judge Thomas G. Hull entered his Order denying injunctive relief to appellant Burke–Parsons–Bowlby Corporation (BPB), a Virginia corporation, which owned a validly registered trademark in the phrase AP-PALACHIAN LOG STRUCTURES. Appellants argued that appellee, Appalachian Log Homes, Inc., a Tennessee corporation, should be enjoined from their use of APPA-LACHIAN LOG HOMES as it constituted an infringement of BPB's registered mark. The District Court ruled for the defendant-appellee and we now affirm the decision of the District Court.

BPB applied for a registered trademark for the term APPALACHIAN LOG STRUCTURES in December of 1981 and as evidence of the establishment of secondary meaning, BPB informed the Patent and Trademark Office that it had spent $100,-000 in advertising the name APPALA-CHIAN LOG STRUCTURES and had received approximately $2,000,000 in gross sales of log residences under that name. On August 30, 1983, the Patent and Trademark Office, pursuant to Title 15 U.S.C. § 1052(f), issued a certificate of registration for the mark APPALACHIAN LOG STRUCTURES.

From January of 1980, BPB advertised the name APPALACHIAN LOG STRUC-TURES on a regular basis in various periodicals including *Log Home Guide, Country Homes, The Log Home Annual, Mother Earth News, Alternative House Builder,* and *Better Building Ideas.* BPB specifically advertised in Tennessee during the Knoxville Home Show in April of 1981, including radio and newspaper advertising. A dealership for Appalachian Log Structures was established in Seymour, Tennessee in January of 1981. In addition, in June of 1981 an Appalachian Log Structure dealership was established in New Smyrna Beach, Florida, which notably was the home of Ken Winter, the financier of Appalachian Log Homes, Inc., though no evidence indicated that Winter had prior knowledge of Appalachian Log Structures.

Appellee, Appalachian Log Homes, Inc., began using its name in the east Tennessee area in August of 1981. The name was chosen to represent the location in which the business was located and the kind of product that was sold. The record does not reflect any prior knowledge on the part of appellee of the existence of Appalachian Log Structures.

Appalachian Log Homes builds only handcrafted log homes using Western Hemlock logs with a flat hand-hewn surface and connecting dovetail notches on the logs. The Western Hemlock logs are taken from the core of the tree, measure six inches in depth, twelve inches in height and

* Honorable Ronald E. Meredith, United States District Court, Western District of Kentucky, sitting by designation.

are up to forty feet in length. Their massive size requires a fifteen (15) ton crane to set the logs and thus the residences cannot be sold as a do-it-yourself kit.

On the other hand, BPB through Appalachian Log Structures, manufactures a variety of log structures including commercial buildings and log residences. BPB utilizes primarily round, pressure treated logs of much shorter length made from pine. The logs are notched so that they ultimately form a solid wood wall and can be erected by the home buyer. BPB also manufactures hand-hewn square logs with dovetailed ends.

The testimony of Dr. Leonard W. Brinkman, Associate Professor of Geography at the University of Tennessee was offered by appellee as evidence of the geographically descriptive nature of the term APPALACHIAN. Dr. Brinkman testified that he teaches a course at the University of Tennessee entitled "Geography of Appalachia" and that the term APPALACHIAN refers to an area "extending from the southern part of the State of New York to the central part of the state of Alabama, and in an east-west direction from the Blue Ridge and Smokey Mountains to the plateau regions of Ohio and states to the southwest." (Joint Appendix Pg. 68A). Furthermore, the term APPALACHIAN is used in governmental activity to name a Regional Commission in the Appalachian area, to identify a region for study within the Department of Agriculture and in a report to the news media regarding the rivers, forests, and mountains of the southern Appalachian region. In 1910, the Appalachian Exposition was held in Knoxville, Tennessee. Dr. Brinkman testified that the term APPALACHIAN has been used in the public domain since 1902. A map prepared by the United States Geological Survey was introduced and the title of the map was the "Appalachian Region." The map indicated that the "Appalachian Region" extends into the east Tennessee area as well as West Virginia, the western counties of Virginia and the western counties of North Carolina.

The appellee offered the testimony of Larry Hagood, a licensed attorney in the State of Tennessee who found by virtue of his research that the term APPALACHIAN was used in 132 business titles in North Carolina, Virginia and West Virginia.

The Lanham Act provides in pertinent part that:

> No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—
>
> \*   \*   \*   \*   \*   \*
>
> (e) Consists of a mark which, (1) when applied to the goods of the applicant is merely descriptive ... or (2) when applied to the goods of the applicant is primarily geographically descriptive....
> (f) Except as expressly excluded in paragraphs (a)—(d) of this section, nothing in this chapter shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods and commerce. The Commissioner may accept as prima facie evidence that the mark has become distinctive, as applied to the applicant's goods and commerce, proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the five years next preceding the date of the filing of the application.

Title 15 U.S.C. § 1052. Receipt of a registered trademark automatically invokes a statutory presumption that the trademark is valid. Title 15 U.S.C. § 1115(a). The statutory presumption shifts the burden of proof to the party challenging the validity of the mark. *WSM, Inc. v. Hilton,* 724 F.2d 1320, 1326 (8th Cir.1984); *Scientific Applications, Inc. v. Energy Conservation Corp.,* 436 F.Supp. 354 (D.C.Ga.1977). Furthermore, the District Court may not overrule the decision of registerability of the Patent and Trademark Office (PTO) unless the party challenging the mark argues persuasively that the mark was ineligible for protection. *Scientific Applications,* 436 F.Supp. at 360. Validity of a registered trademark is contingent on de-

termining first whether the mark is (1) arbitrary and fanciful; (2) suggestive; (3) descriptive; or (4) generic. *WLWC Centers, Inc. v. Winners Corp.*, 563 F.Supp. 717, 719 (D.Tenn.1983). Neither generic nor descriptive terms are protectable without establishing secondary meaning. *20th Century Wear, Inc. v. Sanmark–Stardust Inc.*, 747 F.2d 81, 87 (2nd Cir.1984). A mark is descriptive:

> "... if it describes: the intended purpose, function or use of the goods; the class of users of the goods; a desirable characteristic of the goods; or the end effect upon the user."

*Wynn Oil Co. & Classic Car Wash Inc. v. Thomas*, 839 F.2d 1183, 1190 (6th Cir.1988). If the mark "imparts information directly, it is descriptive." *Anheuser–Busch, Inc. v. Stroh Brewery Co.*, 587 F.Supp. 330, 335 (E.D.Mo.1984); *affirmed* 750 F.2d 631 (8th Cir.1984). APPALACHIAN LOG STRUCTURES refers to either the origin of the log structures or to a particular style of log structures. The term LOG is a generic term commonly used to denote a rough cut portion of a tree and the term STRUCTURE is a commonly used descriptive term. The parties do not dispute the classification of the terms LOG and STRUCTURE as made by the District Court. Instead the controversy centers on whether APPALACHIAN LOG STRUCTURES is a primarily geographically descriptive term.

The appellee introduced substantial evidence supporting the District Court's determination that APPALACHIAN LOG STRUCTURES is primarily geographically descriptive. The Appalachian region has been publicly acknowledged as a distinct, identifiable region since 1902. Furthermore, the regionally descriptive term APPALACHIAN is used in 132 businesses located in the Appalachian region. The Lanham Act does not protect primarily geographically descriptive marks.

> "It is plain that the congressionally established prohibition against registration of geographical names or terms basically stems from the realization that most terms in the vocabulary of this science are generic or descriptive. Thus, Congress has expressly left accessible to all potential users those names of subdivisions of the earth—regions, nations, counties, town, rivers, lakes, and other natural and artificial geographical units—which could be employed to draw public attention to the origin of a product or the situs of a business. It would obviously promote unfair competition to proscribe for all save a single producer the name of a region and thereby preclude other producers of the same product in the same region from indicating their product's origin."

*World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 485 (5th Cir. 1971). Where it is determined that the mark as perceived by potential purchasers describes the geographic origin of the goods the mark is primarily geographically descriptive. *In re Nantucket*, 677 F.2d 95, 99 (U.S.Ct.C. & P.A.1982). To further clarify whether the mark is primarily geographically descriptive, it is valuable to examine the possibility that the geographic term is "minor, obscure, remote or *unconnected with the goods.*" *Nantucket*, 677 F.2d at 99. *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 486 (5th Cir.1971); *In re Brauere: Aying Franz Inselkammen, KG*, 217 U.S. P.Q. 73, 75 (T.T.A.B.1983); *V & V Food Products, Inc. v. Cacique Cheese Co.*, 683 F.Supp. 662, 671 (N.D.Ill.1988). Use of a geographic term such as DUTCH to describe paint, WORLD to describe carpets, EUROPEAN to describe health spas, TOURAINE to describe coffee, and NANTUCKET to describe men's shirts is entirely arbitrary. The protected mark has no relationship to the source of the goods since none of the goods were manufactured in the geographic area described. In each of these instances the mark was protectable and not precluded under the primarily geographically descriptive category. 15 U.S.C. § 1052(e)(2). *National Lead Co. v. Wolfe*, 223 F.2d 195 (9th Cir.); *cert. denied*, 350 U.S. 883, 76 S.Ct. 135, 100 L.Ed. 778 (1955); *World Carpets*, 438 F.2d at 485; *Health Industries v. European Health Spas*, 489 F.Supp. 860, 867–868 (S.D.S.D.1980); *La-Touraine Coffee Co. Inc. v. Lorraine Cof-*

*fee Co., Inc.,* 157 F.2d 115, 116–117 (2nd Cir.) *cert. denied* 329 U.S. 771, 67 S.Ct. 189, 91 L.Ed. 663 (1946); *Nantucket,* 677 F.2d at 99. The case at bar presents a slightly different situation in that the evidence reflects that Appalachian Log Structures is located in Virginia, one of the "Appalachian" states. The APPALACHIAN reference is therefore not merely arbitrary or fanciful. The Legislative History of the Lanham Act points out that where a logical connection can be made between the product and the geographical term, the term is geographically descriptive.

> "To illustrate, the word 'Alaska' would probably have no descriptive or geographical meaning applied to bananas, but applied to canned salmon would unquestionably have a descriptive as well as geographical meaning."

*Nantucket,* 677 F.2d at 107. The permissible inference to be drawn from the use of the term APPALACHIAN in this instance is to describe the origin of the product.

APPALACHIAN could be used to refer to a particular style of log structures as well and indeed, the District Court concluded without supporting evidence that it referred to a "type of rustic architecture associated with our geographical region of the country." (Joint Appendix 11A) BPB vehemently argues that the court's conclusion in light of the evidence to the contrary is clearly erroneous and that failure to adduce evidence that the Appalachian region is known for log homes is fatal to the District Court's decision. We decline to follow BPB's assertion.

■ Though more than a geographic name is required in order to meet the "primarily geographically descriptive" category, there is no requirement that the challenger to a trademark demonstrate that the area is noted for the goods in question. The proper inquiry is "What meaning, if any, does the term convey to the public with respect to the goods on which the name is used?" *Nantucket,* 677 F.2d at 102. When a geographic name is used on goods, it does not represent a single source but refers to the area in which the goods originated. A "goods/place association" by the public is therefore presumed. *Nantucket,* 677 F.2d at 102. The District Court properly found that a goods/place association is made by the term regardless of whether the area was noted for the production of those goods.

■ A trademark that is primarily geographically descriptive must have acquired secondary meaning to invoke the protection of the Lanham Act. The purpose of requiring the establishment of secondary meaning is to give effect to those geographic marks which no longer cause the public to associate the goods with a particular place but to associate the goods with a particular source. *American Footwear Corp. v. General Footwear Co. Ltd.,* 609 F.2d 655 (2nd Cir.1979), *cert. denied* 445 U.S. 951, 100 S.Ct. 1601, 63 L.Ed.2d 787 (1980). The geographical term no longer primarily denotes the geographic area, but with secondary meaning it primarily denotes a single source for the product.

When BPB applied for registration of the mark APPALACHIAN LOG STRUCTURES in December of 1981, the Patent and Trademark Office (PTO) requested evidence to establish secondary meaning of the term. BPB furnished the PTO with gross sales figures and advertising expense figures. At the trial of this matter, evidence was elicited from Mr. Parson of BPB by appellant that from 1979 to 1981 BPB achieved $2,000,000 in gross sales and from 1980 to 1981 BPB expended approximately $100,000 in advertising the mark. Additionally, through cross-examination of Mr. Parsons, appellant offered evidence that BPB had used the mark in the general community from January of 1980 until August of 1981 when appellee began using the name APPALACHIAN LOG HOMES. The term therefore had twenty months in which to acquire secondary meaning. The PTO granted the registration of APPALACHIAN LOG STRUCTURES as BPB's mark on August 30, 1983.

■ The critical question for this Court is whether the evidence was sufficient for the District Court to properly overrule the PTO decision of registerability and to conclude that secondary meaning

did not exist. Secondary meaning is proved when by a preponderance of the evidence it can be determined that the attitude of the consuming public toward the mark denotes "a single thing coming from a single source." *Aloe Cream Laboratories v. Milsan, Inc.*, 423 F.2d 845, 849 (5th Cir.1970), quoting *Coca–Cola Co. v. Koke Co.*, 254 U.S. 143, 146, 41 S.Ct. 113, 113, 65 L.Ed. 189 (1920). Direct proof of secondary meaning is difficult to obtain. *Aloe Cream*, 423 F.2d at 849. Absent direct proof, the Court must draw reasonable inferences from evidence of long-term usage, from considerable effort and expenditure of money toward developing a reputation and good will for the trademark. *WLWC Centers*, 563 F.Supp. at 723. Sales volume, though relevant, is not necessarily sufficient to indicate recognition of the mark by purchasers as an indication of the source. *Seabrook Foods, Inc. v. Bar–Well Foods Ltd.*, 568 F.2d 1342, 1345 (U.S.C.C.P.A. 1977); *In re International Spike, Inc.*, 190 U.S.P.Q. 505, 507 (TTAB 1976). Advertising expense also is relevant but will not, standing alone, establish secondary meaning. *Scientific Applications v. Energy Conservation Corp.*, 436 F.Supp. 354, 361 (N.D.Ga.1977). Where advertising expenditures are required to "merely survive" in the competitive market, advertising expenditures cannot be used to prove secondary meaning. *WLWC Centers*, 563 F.Supp. at 724. However, *extensive* advertising which results in consumer association with a single source can establish secondary meaning. (Emphasis added). *Scott Paper Co. v. Scott's Liquid Gold Inc.*, 589 F.2d 1225, 1228 (3rd Cir.1978). The duration of use of the mark can establish secondary meaning where the duration is more than a relatively short period. In *WLWC Centers*, the Court determined that three years was insufficient to prove that the mark had acquired secondary meaning. *WLWC Centers*, 563 F.Supp. at 723.

The PTO granted registration of APPALACHIAN LOG STRUCTURES solely upon evidence of sales and advertisement. Though deference is given the PTO decision, the presumption is rebuttable. In addition to the evidence presented to the PTO, undisputed evidence of use of the mark for a very short duration was before the Court. We find that the additional evidence of short duration was, as the District Court noted, "highly relevant" and was therefore sufficient to rebut the PTO finding of secondary meaning.

BPB asserts that secondary meaning was proven by advertising expenditures, sales achieved, the company's climb to the top of the industry and the testimony of Mr. Parsons that APPALACHIAN LOG STRUCTURES had secondary meaning. No consumer evidence was submitted. The evidentiary burden necessary to establish secondary meaning is substantial. *Bank of Texas v. Commerce Southwest, Inc.*, 741 F.2d 785, 787 (5th Cir.1984). Though BPB's advertising expenditures for the mark are relevant, there is no evidence to establish the amount as extensive or to distinguish it as beyond that necessary to survive in the market. The gross sales figure of $2,000,000 encompasses three years and includes commercial as well as residential buildings and averages approximately $666,000 in gross sales each of the three years. The significance of BPB's climb to the top of the market is limited by the fact that no evidence establishes that it occurred before appellee began using its name. Secondary meaning must be established prior to others use of a similar name. *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1043 (2nd Cir.1980). The testimony of Fletcher Parsons that APPALACHIAN LOG STRUCTURES had acquired secondary meaning must be viewed with skepticism. Mr. Parsons, as co-owner of BPB, has a recognizable interest in obtaining a favorable ruling and without supporting facts this portion of his testimony was properly disregarded. Secondary meaning was not established by BPB.

Having agreed with the District Court's finding that APPALACHIAN LOG STRUCTURES was unprotectable, there is no need to review the issues raised on appeal which assume registerability. Therefore, the judgment of the District Court is AFFIRMED.

KRUPANSKY, Circuit Judge, concurring.

I write briefly to express my concurrence in the result articulated by the majority opinion. Under 15 U.S.C. § 1115(a), the PTO's registration creates only a "prima facie" presumption that the mark is valid. The registration "shall not preclude an opposing party from proving any legal or equitable defense or defect which might have been asserted if such mark had not been registered." *Id.* It is well-settled that "under the Lanham Act, registration by itself does not enlarge a registrant's substantive rights in a mark." *Amer. Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 10 (5th Cir.1974) (citing *Turner v. HMH Publishing Co.*, 380 F.2d 224, 228 (5th Cir.), *cert. denied*, 389 U.S. 1006, 88 S.Ct. 566, 19 L.Ed.2d 601 (1967)). Indeed, Lanham Act registration does not shift the ultimate burden of proof, but merely imposes on a challenger of a trademark "the burden of going forward with evidence to meet or rebut the presumption; it does not shift the ultimate burden of proof." *Silverman v. CBS, Inc.*, 666 F.Supp. 575, 578 (S.D.N.Y.1987). *See also House of Westmore, Inc. v. Denney*, 151 F.2d 261, 265 (3d Cir.1945) (ultimate burden of proving claimed validity of registered trademark rests with registrant); *Sylvania Elec. Products, Inc. v. Dura Elec. Lamp Co.*, 144 F.Supp. 112 (D.N.J.1956) (same), *aff'd*, 247 F.2d 730 (3d Cir.1957).

In the case at bar, the ultimate burden of proof rested upon the plaintiff. Once the defendant had rebutted the plaintiff's prima facie presumption anchored in plaintiff's registration of the mark by evidence that the mark was merely geographically descriptive and that it had not been used for an extended period of time, defendant had satisfied its burden of going forward. When the presumption arising from registration was rebutted, the ultimate burden of proof including proof of secondary meaning reverted to the plaintiff. On rebuttal, plaintiff failed to satisfy its ultimate burden of proof by introducing sufficient secondary meaning of the mark. *See Bank of Tex. v. Commerce Southwest, Inc.*, 741 F.2d 785, 787 (5th Cir.1984) (evidentiary burden necessary to establish secondary meaning for a geographically descriptive term is substantial); *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 794 (5th Cir.1983) (if term descriptive, rather than inherently distinctive, burden necessary to establish secondary meaning is substantial); *Telemed Corp. v. Tel Med Corp.*, 588 F.2d 213, 220 (7th Cir.1978) (same).

It was not "clearly erroneous" for the district court to conclude that plaintiff had failed to meet this substantial burden. Plaintiff's advertising was in itself insufficient to prove secondary meaning. *Application of Andes Candies, Inc.*, 478 F.2d 1264, 1267 (C.C.P.A.1973); *Amer. Footwear Corp. v. Gen'l Footwear Corp.*, 609 F.2d 655, 663 (2d Cir.1979), *cert. denied*, 445 U.S. 951, 100 S.Ct. 1601, 63 L.Ed.2d 787 (1980). Nor was evidence concerning the volume of sales persuasive. *Twentieth Century Wear, Inc. v. Sanmark–Stardust, Inc.*, 747 F.2d 81, 90 (2d Cir.1984), *cert. denied*, 470 U.S. 1052, 105 S.Ct. 1755, 84 L.Ed.2d 818 (1985); *Seabrook Foods, Inc. v. Bar Well Foods, Ltd.*, 568 F.2d 1342, 1345 (C.C.P.A.1977).

Because of the very limited period during which the mark had been used, and given the absence of any direct evidence of consumer testimony as to secondary meaning, I conclude that plaintiff has not met its burden of proving secondary meaning and accordingly concur in the result of the majority opinion.

RALPH B. GUY, Jr., Circuit Judge, dissenting.

While I agree with the majority's conclusion that APPALACHIAN LOG STRUCTURES is a geographically descriptive mark, I dissent because I believe the majority erred in finding no secondary meaning had been established. When the Patent and Trademark Office registers a proposed mark, that mark is presumptively valid. The Second Circuit, in *Aluminum Fabricating Company of Pittsburgh v. Season–All Window Corp.*, 259 F.2d 314 (2d Cir. 1958), made explicit its belief that one chal-

lenging a registered mark must submit very persuasive evidence on its behalf:

We are of the opinion that [15 U.S.C. § 1057(b)] means not only that the burden of going forward is on the contestant of the registration but there is a strong presumption of validity so that the party claiming invalidity has the burden of proof and in order to prevail it must put something more into the scales than the registrant. In a case such as this, where [both sides are strong], the courts should not overrule the action of the Patent Office to whose care Congress has entrusted the preliminary determination as to whether a mark fulfills the requirements of the statute.

259 F.2d at 316. This passage was cited approvingly by the court for the Western District of Tennessee in *Tigrett Industries, Inc. v. Top Value Enterprises, Inc.*, 217 F.Supp. 313 (W.D.Tenn.1963). This court used similar language in *Wynn Oil Company v. Thomas*, 839 F.2d 1183 (6th Cir. 1988), in which we recognized that, absent strong evidence from the challenger, district courts should accept the judgment of the Patent and Trademark Office, "which is undoubtedly expert in these matters." At 1190. Not only does this general presumption exist, but when the PTO approves a mark under 15 U.S.C. § 1052(f), it has necessarily determined that the mark has acquired a secondary meaning. *Council of Better Business Bureaus, Inc. v. Better Business Bureau of South Florida*, 200 U.S.P.Q (BNA) 282 (1978); *Iowa Farmers Union v. Farmers' Educational and Coop. Union*, 247 F.2d 809 (8th Cir.1957).

There is thus a strong presumption in favor of the PTO's finding that BPB established secondary meaning, and the district court could find the defendant to have rebutted this presumption only if the defendant offered convincing proof that the PTO determination was erroneous. Here, Appalachian Log Homes' only real evidence is the fact that BPB used its mark for a relatively short time before approval. While the length of time the mark has been used is undoubtedly a relevant factor, it is only one of several to be considered. *American Footwear Corp. v. General Footwear Co., Ltd.*, 609 F.2d 655 (2d Cir. 1979); *Union Carbide Corp. v. Ever-Ready, Inc.*, 531 F.2d 366 (7th Cir.1976); *King-Size, Inc. v. Frank's King Size Clothes, Inc.*, 547 F.Supp. 1138 (S.D.Tex. 1982); 1 J. McCarthy, *Trademarks and Unfair Competition* § 15.20. Here, the other relevant factors, such as extent of advertising, the company's success, and widespread recognition, argue in favor of a finding of secondary meaning. Additionally, the relatively short period of use was certainly a factor the PTO must have considered in deciding whether to approve the mark for registration. The PTO found a secondary meaning had been established, and Appalachian Log Homes offered only very weak evidence to dispute that finding. I would REVERSE the district court on its ruling as to secondary meaning.