64 F.3d 662
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
ASHLAND OIL, INC., Plaintiff-Appellant,
v.
OLYMCO, INC., doing business as Olymco Muffler Center; and
James A. Livers, Defendants-Appellees.
 No. 94-5520.
 United States Court of Appeals, Sixth Circuit.
 Aug. 21, 1995.
 
 Before: KEITH and BATCHELDER, Circuit Judges, and DUGGAN, District Judge.*
 BATCHELDER, Circuit Judge.
 
 
 1
 Ashland Oil, Inc., appeals the district court's judgment ordering cancellation of its trademark and dismissing its claim of trademark infringement against Olymco, Inc. We affirm.
 
 I.
 
 2
 In December 1986, Ashland acquired the mark, "Instant Oil Change," from a Michigan corporation of the same name. At that time, the mark was registered on the "Supplemental," rather than the "Principal," register of the United States Patent and Trademark Office (USPTO) since the mark had been classified as descriptive and had not achieved or established secondary meaning. Ashland obtained transfer of the mark to the principal register of the USPTO in March 1988, under Sec. 2(f) of the Lanham Act, which allows for a presumption of distinctiveness of the mark after substantial exclusive use in commerce for five years. Ashland used the mark to identify the rapid oil change service provided by its subsidiary, Valvoline Instant Oil Change, Inc. Ashland owned fourteen service centers in the Louisville, Kentucky metropolitan area.
 
 
 3
 Olymco has five service centers in the Louisville area. In February 1990, Olymco began using the phrase "Instant Oil Change" in advertising and on signs for its own rapid oil change facilities to denote a service that was "fast, convenient, without delay." Ashland demanded in August 1990 that Olymco remove a sign bearing the words "Instant Oil Change" from one of Olymco's Louisville shops, asserting that the continued use constituted an infringement upon Ashland's exclusive right to use the mark. Olymco did not discontinue its use of the phrase, and Ashland brought suit, seeking injunctive relief and damages. Olymco counterclaimed for cancellation of the trademark registration.
 
 
 4
 Following the bench trial, the district court concluded that Ashland had failed to establish that the descriptive term "Instant Oil Change" had gained the requisite secondary meaning prior to Olymco's first use of the mark in February, 1990. Consequently, pursuant to 15 U.S.C. Sec. 1119, the court ordered cancellation of the service mark and its removal from the principal register of the USPTO and dismissed Ashland's claim of trademark infringement. Ashland made a timely appeal to this Court in accordance with 28 U.S.C. Sec. 2107 and Fed.R.App.P. 4(a).
 
 II.
 
 5
 The Lanham Act (the "Act") gives a seller or producer the exclusive right to register a trademark and to prevent competitors from using that trademark. 15 U.S.C.A. Secs. 1052, 1114(1) (West 1995); Qualitex Co. v. Jacobson Products Co., 115 S.Ct. 1300, 1302 (1995). However, the Act prohibits registration on the principal register of marks that are merely descriptive, without evidence that the mark has become distinctive of the applicant's goods in commerce. 15 U.S.C.A. Secs. 1052(e) and (f) (West 1995). A mark is descriptive if "it describes ... a desirable characteristic of the goods" offered. Burke-Parsons-Bowlby Corp. v. Appalachian Log Homes, Inc., 871 F.2d 590, 594 (6th Cir.1989) (hereinafter Burke ). In this case, Ashland concedes that the term "Instant Oil Change" is a descriptive mark, ineligible for registration absent proof of distinctiveness, or "secondary meaning."
 
 
 6
 "Secondary meaning" is achieved when "in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 851, n. 11 (1982) (citing Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 118 (1938)). This Court has held that secondary meaning "is proved when by a preponderance of the evidence it can be determined that the attitude of the consuming public toward the mark denotes a 'single thing coming from a single source.' " Burke, 871 F.2d at 596 (quoting Aloe Creme Labs, Inc. v. Milsan, Inc., 423 F.2d 845, 849 (5th Cir.), cert. denied, 398 U.S. 928 (1970)).
 
 
 7
 The section of the Act under which Ashland's "Instant Oil Change" mark is registered provides that proof of substantially exclusive and continuous use of the mark in commerce for the five years before the date on which the claim of distinctiveness is made constitutes prima facie evidence that the mark has become distinctive. 15 U.S.C.A. Sec. 1052(f) (West 1995). A certificate of registration on the principal register is deemed "prima facie evidence of the validity of the registered mark ... and of the registrant's exclusive right to use the registered mark ... in connection with the goods or services specified...." 15 U.S.C.A. Sec. 1057(b) (West 1995).
 
 
 8
 However, the protection accorded to a registered descriptive mark depends on the "strength" of the mark. Qualitex, 115 S.Ct. at 1305. " '[S]trong' marks, with greater secondary meaning, receive broader protection than 'weak' marks." Id. The Act gives the court the power to cancel registrations, in whole or in part, see 15 U.S.C.A. Sec. 1119 (West 1995), and a trademark may be challenged within five years of its registration on the principal register, if the challenger can prove "any legal or equitable defense or defect ... which might have been asserted if such mark had not been registered." 15 U.S.C.A. Sec. 1115(a) (West 1995); Park 'N Fly, Inc. v. Dollar Park and Fly, Inc., 469 U.S. 189, 196 (1985). Section 1115(a) allows the mark to be challenged as "merely descriptive," if it is without secondary meaning. Park 'N Fly, 469 U.S. at 196. However, unless the challenger can introduce evidence to rebut the presumption of validity, this Court has held that it will not disturb the conclusions of the Patent and Trademark Office. Wynn Oil Co. v. Thomas, 839 F.2d 1183, 1190 (6th Cir.1988). Further, we have held that registration under the Lanham Act does not shift the ultimate burden of proof of validity of the mark, which remains with the registrant; rather, registration merely imposes on the challenger "the burden of going forward with evidence to meet or rebut the presumption" that the trademark is valid. Burke, 871 F.2d at 597 (Krupansky, J., concurring, citing cases).
 
 
 9
 In this case, Olymco challenged the registration of the phrase "Instant Oil Change" within the statutory five-year period. The district court found that Olymco overcame the presumption of validity by producing evidence that the mark was merely descriptive,[1] and that Ashland had failed to sustain its ultimate burden of proving validity. Ashland argues on appeal that the district court erred in its conclusion.
 
 
 10
 The owner of a descriptive mark must establish that the mark had secondary meaning prior to its first use by the challenger. Burke, 871 F.2d at 596. Secondary meaning may be established by direct proof; however, since direct proof is difficult to obtain, in its absence, "the Court must draw reasonable inferences from evidence of long-term usage, from considerable effort and expenditure of money toward developing a reputation and good will for the trademark." Id. In this case, Ashland could have satisfied its ultimate burden that its mark had acquired secondary meaning by producing either direct evidence, such as a consumer survey or, in the absence of direct proof, indirect evidence from long-term use, sales and advertising expenditures, or effort and expenditures in developing a reputation and good will for the mark.
 
 
 11
 The trial court's finding that a mark has not acquired secondary meaning is a factual determination. Burke, 871 F.2d at 597 (Krupansky, J., concurring); accord Volkswagenwerk Aktiengesellschaft v. Rickard, 492 F.2d 474, 477-78 (5th Cir.1974). Pursuant to Fed.R.Civ.P. 52(a), factual questions are reviewed under the "clearly erroneous" standard, even if the findings are based on "physical or documentary evidence or inferences from other facts." Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985).
 
 
 12
 With regard to the probative value of consumer surveys, there is no general agreement as to what minimal level of consumer association with a single source is required to establish secondary meaning, although figures of fifty percent or more have been considered sufficient by courts in other circuits. See, e.g., Conopco, Inc. v. May Dep't Stores Co., 784 F.Supp. 648, 677 (E.D.Mo.1992), cert. denied, 115 S.Ct. 1724 (1995); compare Spraying Systems Co. v. Delavan, Inc., 975 F.2d 387, 394 (7th Cir.1992) (finding a recognition figure of thirty-eight percent "marginal" evidence of secondary meaning, even in a "properly designed survey") with Monsieur Henri Wines, Ltd. v. Duran, 204 U.S.P.Q. 601, 605 (TTAB1979) (finding a recognition figure of thirty-seven percent probative of secondary meaning where respondents had been required to identify the beverage brands from pictures of the labels, without information on possible brands).
 
 
 13
 In this case, both Ashland and Olymco presented consumer surveys as evidence to support their respective claims. Ashland's survey involved interviews with "members of the class comprising licensed drivers over the age of 21, who own and are responsible for maintaining at least one car," which individuals were randomly selected from those entering shopping malls in the Louisville area, where both Ashland and Olymco use the name "Instant Oil Change," and in the Atlanta area where the name is not utilized by anyone. At the time the survey was conducted, in January 1992, forty-two percent of the Louisville respondents surveyed believed that the phrase "Instant Oil Change" referred specifically to one company.[2] After adjusting this figure to compensate for guessing by the respondents, Ashland's survey expert indicated that twenty-six percent of the Louisville respondents identified the mark with a single source. One-fifth of those respondents who said that "Instant Oil Change" was a single company were able to recall, unaided, that the specific oil used was Valvoline.
 
 
 14
 Ashland's survey expert concluded that the phrase "Instant Oil Change" had developed the required secondary meaning in a "legally significant fraction of the applicable public." However, the trial court found the results showed that only "a small segment of the consuming public in the Louisville area" associated "Instant Oil Change" with a single source. Moreover, the court found that the survey conducted in 1992 did "not accurately depict the level, if any, of secondary meaning Ashland's mark had when Olymco first began to use it in February 1990."
 
 
 15
 Olymco's market survey of Louisville shopping mall customers, conducted in July 1992, showed that seventy-four percent of respondents were able to correctly identify a pictured oil change facility as being owned by Valvoline, and a similar percentage could identify a pictured Olymco facility, although when asked the reason for their indication, seventy percent noted the Valvoline or Olymco sign as the source for their response. When asked if the term "Instant Oil Change" indicated anything particular to them, none of the respondents in Olymco's survey volunteered that the term indicated a specific provider of oil change services but that it indicated, for example, "fast" or "no waiting."
 
 
 16
 Each party has criticized the methodology of the other's survey. Olymco suggests that Ashland's survey was biased and leading, and that in any event, its timing rendered it irrelevant. Ashland criticizes the lack of experience of Olymco's interviewers, noting that one interviewer had recorded the same verbatim response forty-four times, whereas that response appeared in none of the sixty-six interviews conducted by the other interviewers. Although the district court acknowledged that Ashland's criticisms of Olymco's survey "may have some merit," the court nonetheless found the survey and testimony of Olymco's expert "credible."
 
 
 17
 It is the trial court's responsibility to determine the probative value of a consumer survey, and it is appropriate for the trial court to accord little or no weight to a defective survey. Frisch's Restaurant, Inc. v. Shoney's, Inc., 759 F.2d 1261, 1268 (6th Cir.1985). With respect to Ashland's survey, only one-fifth of the forty-two percent that associated "Instant Oil Change" with a single source--about eight percent of the survey group as a whole--recalled, unaided, the name Valvoline. In light of testimony that recognition would probably have been lower, had the survey been conducted in 1990, when Olymco first made use of the term, and the court's prerogative to question the validity of the survey, the district court was not clearly erroneous in its finding that Ashland's survey was not sufficiently probative of the mark's having secondary meaning in February 1990. Nor did the court clearly err in admitting Olymco's survey. Even if the Olymco survey was defective, the district court's conclusion that it was sufficient to demonstrate that as of February 1990 the mark "Instant Oil Change" was not distinctive, and thus was sufficient to rebut the statutory presumption of validity, was not clearly erroneous.
 
 
 18
 Because secondary meaning may also be proven by indirect evidence such as the trademark holder's length of use or sales and advertising expenditures to promote customer association of the trademark with the product or service, it is necessary to review the record for such indirect evidence. Even if this Court considers a particular finding to be clearly erroneous, the decision of the trial court will not be reversed unless the weight of all the direct and indirect evidence clearly establishes secondary meaning.
 
 
 19
 Although advertising expense is probative of whether the holder of a descriptive trademark has established the requisite secondary meaning, proof of advertising expenditures will not suffice if those expenditures were made "merely to survive" in the market. Burke, 871 F.2d at 596. However, extensive advertising which results in consumer association with a single source can establish secondary meaning, id., the test of secondary meaning being the effectiveness of the effort expended. American Heritage Life Ins. Co. v. Heritage Life Ins., Co., 494 F.2d 3, 12 (5th Cir.1974); Discount Muffler Shop v. Meineke Realty Corp., 535 F.Supp. 439, 447 (N.D.Ohio 1982).
 
 
 20
 Ashland's sales revenues in the Louisville area increased from $348,375 in financial year 1987 to $1,503,544 in 1988 and $1,960,079 in 1989, with advertising expenditures in each of those years being based on a percentage of business;[3] however, the district court concluded that Ashland's expenditures were "merely sufficient to survive in the market," and that it had "put forth no specific effort or expenditures toward developing a reputation and good will for the trademark."
 
 
 21
 Ashland also presented evidence of the length of use of its mark. Ashland's application for transfer of the mark, "Instant Oil Change," to the principal register in April 1987, verified that the phrase had been in "substantial exclusive use for five years in commerce" at that time, suggesting at least eight years of such use prior to Olymco's first use of the phrase; however, in light of the other evidence in this case, we cannot say that the district court's implicit finding that the length of use alone was insufficient to prove that this mark had attained secondary meaning was clearly erroneous.
 
 
 22
 The trademark at issue, "Instant Oil Change," clearly is descriptive and does not serve to distinguish the goods or services of Ashland from similar goods and services offered by others. Although Ashland attempted to provide the district court with direct evidence that its registered mark had attained the requisite secondary meaning to distinguish the phrase, Ashland's consumer survey had two basic flaws: only a very small percentage of respondents had associated "Instant Oil Change" with Ashland's company Valvoline Instant Oil Change, Inc.; and Ashland's 1992 survey does not demonstrate that the consuming public had associated "Instant Oil Change" only with Ashland at the time Oymco began using the phrase in 1990. Our review of this record leads us to conclude that no single portion of Ashland's evidence is compelling, nor is the entirety of Ashland's evidence persuasive. Thus, the district court properly cancelled Ashland's trademark registration and dismissed its lawsuit against Olymco.
 
 III.
 
 23
 Based on the foregoing, the judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The issue of whether Olymco has successfully rebutted the statutory presumption of validity of the "Instant Oil Change" mark is somewhat complicated by the fact that Ashland did not appeal the district court's order denying Ashland's motion for a preliminary injunction, and the finding in that order that Olymco had demonstrated that the mark was merely descriptive. At trial, Ashland conceded that it bore the burden of demonstrating that the mark had become distinctive, i.e., had acquired secondary meaning, prior to Olymco's first use of the term. The district court's memorandum opinion denying the preliminary injunction simply states that "Olymco has rebutted this presumption through evidence that the mark is weak and merely descriptive of the type of service offered." The district court's order dismissing Ashland's claim of trademark infringement and cancelling the trademark simply notes that Olymco "overcame the presumption of validity by producing evidence that the mark was merely descriptive...." For this reason, we will review all of the evidence in the record before us to determine whether Olymco can be said to have rebutted the presumption
 
 
 [2]
 According to Ashland's expert, this number was 18% higher than the number of respondents in Atlanta who associated "Instant Oil Change" with a single source
 
 
 [3]
 In 1990, for example, advertising and marketing expenditures in the Louisville area were $164,228.75, while sales revenues were $2,466,578