RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0216p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

BLISS COLLECTION, LLC dba bella bliss,

        *Plaintiff-Appellant* (21-5723),

        *Plaintiff-Appellee* (22-5361),

   *v.*

LATHAM COMPANIES, LLC dba little english,

        *Defendant-Appellee* (21-5723),

        *Defendant-Appellant* (22-5361).

Nos. 21-5723/22-5361

─────────────────

Appeal from the United States District Court for the Eastern District of Kentucky at Lexington.
No. 5:20-cv-00217—Claria Horn Boom, District Judge.

Argued:  January 25, 2023

Decided and Filed:  September 21, 2023

Before:  BUSH, LARSEN, and MATHIS, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:**  Jaci L. Overmann, DINSMORE & SHOHL LLP, Cincinnati, Ohio, for Bliss Collection, LLC.  Laurence J. Zielke, ZIELKE LAW FIRM, PLLC, Louisville, Kentucky, for Latham Companies, LLC.  **ON BRIEF:**  Jaci L. Overmann, DINSMORE & SHOHL LLP, Cincinnati, Ohio, for Bliss Collection, LLC.  Laurence J. Zielke, Janice M. Theriot, ZIELKE LAW FIRM, PLLC, Louisville, Kentucky, for Latham Companies, LLC.

     MATHIS, J., delivered the opinion of the court in which BUSH, J., joined.  LARSEN, J. (pp. 22–29), delivered a separate opinion concurring in part and dissenting in part.

———————————

**OPINION**

———————————

**MATHIS, Circuit Judge.**  In the latest chapter in the saga of two children's clothing manufacturers, we are asked to determine whether one of the manufacturers has properly brought trademark and trade dress infringement claims against the other.  And, if not, whether the defending party is entitled to attorney's fees.  Bliss Collection, LLC and Latham Companies, LLC have had a long and acrimonious relationship after one of Bliss's founders left the company to start Latham as a direct competitor.  The parties have since engaged in sporadic litigation against each other.

The district court dismissed Bliss's trademark and trade dress infringement claims.  After Latham sought attorney's fees for successfully defending against those claims, the district court declined to award fees to Latham.  Both parties appealed.  We find that Bliss has stated claims for federal and state trademark infringement but has not stated a claim for trade dress infringement.  We also find that the district court did not err in denying attorney's fees to Latham for defending the trademark and trade dress infringement claims.  Therefore, we affirm in part and reverse in part.

**I.**

In 1999, Shannon Latham, Elizabeth McLean, and Jennifer Vernooy formed Bliss to sell children's clothing under the name "bella bliss."  According to Bliss, bella bliss products are "heirloom-quality pieces" based on "retro-inspired prints," "handmade knits," and "separates." *About bella bliss*, BELLA BLISS, https://www.bellabliss.com/pages/about (last visited Sept. 1, 2023).  Because it creates its own distinctive designs and prints, Bliss asserts that such pieces can only be purchased from Bliss. *See id.*

In 2003, Shannon left Bliss following differences of opinion with the other founders and started Latham to sell her own children's clothing under the name "little english."  According to Latham, little english products are "forever quality garments" that are "[i]nspired by the

exceptional    quality    of    hand-sewn    clothing."    *About    Us*,    LITTLE    ENG.,
https://www.littleenglish.com/pages/about-us-2021-update (last visited Sept. 1, 2023).

*Bliss's Relevant Trademarks*.  Bliss's logo is a lowercase "b" drawn out as if stitched in thread.  Bliss has three registered trademarks for this logo, each of which registers the logo for different applicable uses.[1]  These trademarks were all registered in October 2007 and relate only to the logo itself, rather than whatever color the logo may appear in.  Bliss has a fourth trademark application pending with the U.S. Patent and Trademark Office (filed on May 5, 2020) to register the logo in its signature light blue color (termed "bliss Blue") with the words "bella bliss" underneath it.[2]  This fourth trademark covers the uses of the first three trademarks, plus several others.

*Bliss's Relevant Clothing Designs*.  Bliss has several designs that it claims as signature looks of the bella bliss brand:

- Bliss's "Mirabelle" swimsuit, which features "an exaggerated C-shaped scoop neckline featuring a heavily pleated highly ruffled swim fabric."  R. 11, PageID 461.

- Bliss's jungle print design, a "unique combination of jungle animals" that "create[s] a visually appealing Print with yellow, orange, and blue jungle animals and palm trees."  *Id.* at 462.

- Bliss's color-blocked gingham swim trunks, which feature "a pink gingham waistband, light blue gingham right short leg, and light green gingham left short leg."  *Id.* at 462–63.

- Bliss's "Shep Bubble" romper, which features "an emphasized 'Peter Pan' collar trimmed in white piping, with two white buttons and white stitching with a loose overall fit."  *Id.* at 463.

- Bliss's "Sailor Bubble" look, which features "contrasting outlining and visible buttons at the top and sides."  *Id.* at 464.

- Bliss's "Eloise" blouse, which features "a unique small floral pattern."  *Id.* at 465.

---

[1]U.S. Reg. No. 3,321,192 covers "children's clothing, namely sweaters, dresses, hats, pajamas, rompers and infant sleepers."  U.S. Reg. No. 3,327,352 covers "bed blankets."  U.S. Reg. No. 3,469,536 covers "duffel bags, and tote bags."  R. 11, PageID 431–33.

[2]The "bliss Blue" color covers "Pantone color 13-4220, Artic Paradise (alternative Pantone colors listed as 291 CP, 112-3 C, 442-U, and 115-4 U)."  *Id.* at 433.

- Bliss's "Eloise" jumper, which features the same floral pattern as the blouse with "distinctive stitching in a contrast color, with straps across the front of the jumper in a contrasting color and drop-down piping connecting to the side straps." *Id.* at 465.

Bliss contends that these designs have "become famous and widely known and recognized as symbols of unique and high quality garments throughout the state of Kentucky and the whole United States." *Id.* at 459.

In 2005, not long after Latham began operations, Bliss sued Latham for copyright infringement, false designation of origin, unfair competition, and misappropriation of confidential information and trade secrets. Ultimately, that case settled.

In 2020, Latham sued Bliss in Kentucky state court for breach of contract and tortious interference.

Bliss then filed this action against Latham. Bliss asserts claims for: (1) federal copyright infringement, (2) federal trademark infringement, (3) federal trade dress infringement, (4) federal false designation of origin and misappropriation of source, (5) federal unfair competition, (6) trademark infringement under Kentucky common law, and (7) unfair competition under Kentucky common law. Bliss alleges that Latham copied several designs that Bliss copyrighted; altered its logo to match Bliss's logo; altered its logo, website, and social media accounts to match Bliss's signature color; and copied a number of signature designs that Bliss had produced for years. According to Bliss, these actions led consumers to confuse Bliss's and Latham's products and diverted customers from Bliss to Latham.

After Latham moved to dismiss Bliss's amended complaint, the district court dismissed Bliss's federal copyright and trade dress infringement claims but denied Latham's motion on Bliss's other claims. The court dismissed Bliss's remaining claims after Latham filed a motion for reconsideration.

Latham pursued recovery of its attorney's fees for defeating Bliss's federal copyright, trademark, and trade dress infringement claims. The district court granted Latham attorney's fees for defending the copyright claim but denied the motion with respect to the trademark infringement and trade dress claims. The court found that Latham was not entitled to attorney's

fees for defending Bliss's federal trademark and trade dress infringement claims because such awards were warranted only in "exceptional" cases. The court found that Bliss filed its action in good faith and that, despite dismissing Bliss's trademark and trade dress claims, the claims were not so "*exceptionally* meritless" that Latham "merit[ed] a rare attorney's fees award under [15 U.S.C.] § 1117." R. 59, PageID 1642–43.

## II.

We review an order dismissing a complaint under Federal Rule of Civil Procedure 12(b)(6) de novo. *See Lindke v. Tomlinson*, 31 F.4th 487, 495 (6th Cir. 2022). A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In this regard, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

An award of attorney's fees is reviewed for an abuse of discretion. *See Max Rack, Inc. v. Core Health & Fitness, LLC*, 40 F.4th 454, 477 (6th Cir. 2022). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, when it improperly applies the law, or uses an erroneous legal standard." *New London Tobacco Mkt., Inc. v. Ky. Fuel Corp.*, 44 F.4th 393, 403 (6th Cir. 2022) (quoting *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 218 (6th Cir. 2019)).

## III.

Bliss argues that the district court erred in dismissing its claims for federal trademark infringement, federal trade dress infringement, and trademark infringement under Kentucky common law. Latham argues that the district court erred in refusing to award Latham attorney's

fees in connection with Bliss's claims for federal trademark and trade dress infringement.  We take each argument in turn.[3]

A.

*Bliss's Federal Trademark Infringement Claim*.  A trademark is "any word, name, symbol, or device, or any combination thereof . . . [used] to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown."  15 U.S.C. § 1127.  To establish a claim for trademark infringement for a registered trademark, a plaintiff must show that: (1) it owns the registered trademark, (2) the defendant used the trademark in commerce, and (3) the use was likely to cause confusion.  *See* 15 U.S.C. § 1114(1); *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009).

For an unregistered trademark, the mark is not afforded the same presumption of validity that registered marks receive.  *See Fuji Kogyo Co. v. Pac. Bay Int'l, Inc.*, 461 F.3d 675, 683 (6th Cir. 2006) (citation omitted).  Still, unregistered marks may receive protection under § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)(1)).  *See T. Marzetti Co. v. Roskam Baking Co.*, 680 F.3d 629, 633 (6th Cir. 2012) (citing *Tumblebus v. Cranmer*, 399 F.3d 754, 760–61 (6th Cir. 2005)).  The use of such marks (assuming they meet the other criteria used for registered marks) is protected "if followed by continuous commercial utilization."  *Allard Enters., Inc. v. Advanced Programming Res., Inc.*, 146 F.3d 350, 358 (6th Cir. 1998) (citation omitted).

The relevant trademarks at issue include Bliss's three registered trademarks for its lowercase "b" as depicted below:



---

[3]Bliss does not challenge the dismissal of its claims for federal copyright infringement, federal false designation of origin and misappropriation of source, federal unfair competition, and unfair competition under Kentucky common law.

In addition, the amended complaint alleges trademark infringement based on the following pending trademark that includes the color bliss Blue with the words "bella bliss" under it:



R. 11, PageID 430–33, 469–71.

As a preliminary question, we must decide whether the unregistered trademark for the lowercase "b" logo in bliss Blue is entitled to the same analysis as the other three registered trademarks. The question is ultimately one of "continuous commercial utilization." *Allard Enters.*, 146 F.3d at 358.

With respect to continuous use of the unregistered mark, Bliss alleges that it has used its bliss Blue color since 2001 "consistently, extensively, and repeatedly throughout its website, social media pages, on hang tags for the bella bliss Products, and on its packaging . . . ." R. 11, PageID 434 (emphasis removed). It supports these allegations by attaching exhibits to the amended complaint which show Bliss's catalog and social media pages using the color in its branding. Concerning the mark's place in the market, Bliss alleges that bliss Blue has become "widely known and recognized as [a] symbol[] of unique and high quality garments throughout the state of Kentucky and the whole United States." *Id.* at 434, 459. We therefore find that Bliss has adequately alleged continuous use in the unregistered mark.[4]

---

[4]To the extent Bliss alleges that it has a trade dress claim in the color bliss Blue alone, that claim fails. To establish a trade dress claim in a color, Bliss must adequately allege that the color has achieved distinctiveness through "secondary meaning." *See Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 212 (2000). There are several factors for assessing secondary meaning, and the party seeking to establish secondary meaning bears a substantial evidentiary burden in doing so. *DeGidio v. W. Grp. Corp.*, 355 F.3d 506, 513 (6th Cir. 2004); *Burke-Parsons-Bowlby Corp. v. Appalachian Log Homes, Inc.*, 871 F.2d 590, 596 (6th Cir. 1989). Though direct evidence is rare and Bliss need not establish every factor, Bliss must still sufficiently allege "that the attitude of the *consuming public* toward the mark denotes 'a single thing coming from a single source.'" *Burke-Parsons-Bowlby Corp.*, 871 F.2d at 596 (emphasis added, citation omitted). In that sense, alleging little or no evidence regarding

As to these Bliss marks, the complaint sets out a history of Latham's actions that, according to Bliss, shows Latham's infringement. Bliss alleges that Latham initially used a unique logo to brand its clothing:



*Id.* at 431–33. But, over time, Latham allegedly changed its logo to appear similar to, if not mirror, Bliss's trademarks:



---

consumer testimony, surveys, or sales and number of customers appears to be detrimental, if not fatal. *See, e.g.*, *DeGidio*, 355 F.3d at 513–14 (insufficient evidence of consumer testimony and no evidence of consumer surveys); *Burke-Parsons-Bowlby Corp.*, 871 F.2d at 596; *cf. Gen. Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 419–20 (6th Cir. 2006) (exceptionally strong survey evidence sufficient to overcome absence of evidence for five other factors). Bliss's amended complaint asserts no facts concerning factors related to the attitude of the consuming public toward the color bliss Blue.

*Id.* at 459.

For purposes of the motion to dismiss, the parties dispute only whether the amended complaint properly alleges that Latham's logo constitutes a use of Bliss's trademarks that is likely to cause confusion. We have previously found that "[g]enerally, dismissal for failure to state a claim upon which relief can be granted is appropriate in only the most *extreme* trademark infringement cases, such as where goods are unrelated as a matter of law, since the likelihood of confusion is generally a question of fact." *Hensley*, 579 F.3d at 613 (emphasis added, citation and quotation omitted). Accepting Bliss's well-pleaded factual allegations as true, we do not find that Bliss's trademark infringement claim is so extreme as to warrant dismissal at this stage of the case. *See id.*

"The touchstone of liability [for trademark infringement] is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Id.* at 610 (alteration in original) (quoting *Daddy's Junky Music Stores, Inc. v. Big Daddy's Fam. Music Ctr.*, 109 F.3d 275, 280 (6th Cir 1997)). To be liable, the defendant need not use an identification of its goods that is identical to the plaintiff's trademark. *See, e.g.*, *Daddy's Junky*, 109 F.3d at 283–84 (finding a genuine issue of fact concerning trademark infringement where "Big Daddy's Music" was sufficiently similar to—though not the exact same as—"Daddy's Junky Music"). Rather, the defendant's identification must be such that it can be deemed a use of the plaintiff's trademark that causes confusion. *See id.* When determining whether there was a likelihood of confusion, we first ask the gatekeeping question of whether the defendant is "using the challenged mark in a way that identifies the source of [its] goods." *Interactive Prods. Corp. v. a2z Mobile Off. Sols., Inc.*, 326 F.3d 687, 695 (6th Cir. 2003); *see Hensley*, 579 F.3d at 610. If not, then the defendant is using the trademark in a "non-trademark way" and no trademark infringement exists. *Hensley*, 579 F.3d at 610 (citation and quotation omitted).

If the defendant uses the challenged mark in a "trademark way," we then weigh the following factors (sometimes called the *Frisch* factors) to determine whether a likelihood of confusion exists—(1) the strength of the senior mark, (2) the relatedness of the goods or services, (3) the similarity of the marks, (4) evidence of actual confusion, (5) the marketing channels used,

(6) the likely degree of purchaser care, (7) the intent of the defendant in selecting the mark, and (8) the likelihood of expansion of the product lines. *Id.*; *see Sunless, Inc. v. Palm Beach Tan, Inc.*, 33 F.4th 866, 869 (6th Cir. 2022) (citing *Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.* ("*Frisch I*"), 670 F.2d 642, 648 (6th Cir. 1982)). These factors are meant to be "helpful guides rather than rigid requirements." *Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d 494, 509 (6th Cir. 2013) (citation omitted). Ultimately, the question is "whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Id.* (quoting *Daddy's Junky*, 109 F.3d at 280).

### 1. *Whether Latham Used Its Logos in a Trademark Way*

Bliss alleges that Latham infringed on the Bliss trademarks by revising its logos over time to mirror Bliss's. Thus, the infringing use in question is that of Latham's logos, as opposed to Latham's products.

Latham does not dispute that it used its logos in a way that identified the source of its goods. Consequently, Latham uses its allegedly infringing logos in a "trademark way." *See Hensley*, 579 F.3d at 610 (citation and quotation omitted).

### 2. *Whether Latham's Logos Were Likely to Cause Confusion*

Having cleared the preliminary threshold question, we next consider whether Latham used its logos in a manner that was likely to cause confusion among consumers regarding the origin of Bliss's and Latham's goods. Applying the *Frisch* factors, we find that Bliss's amended complaint contains sufficient factual matter to show that Latham's use of its logos was likely to cause confusion. We address each factor below.

### i. <u>Strength of the Senior Mark</u>

"The strength of a mark is a factual determination of the mark's distinctiveness. The more distinct a mark, the more likely is the confusion resulting from its infringement, and, therefore, the more protection it is due." *Frisch's Rest., Inc. v. Shoney's Inc.* ("*Frisch II*"), 759

F.2d 1261, 1264 (6th Cir. 1985).**5** "A mark is strong and distinctive when 'the public readily accepts it as the hallmark of a particular source;' such acceptance can occur when the mark is unique, when it has received intensive advertisement, or both." *Daddy's Junky*, 109 F.3d at 280 (quoting *Frisch II*, 759 F.2d at 1264). When assessing a mark's strength, we initially place the trademark into "one of four categories: generic, descriptive, suggestive, and fanciful or arbitrary." *Id.* "These categories constitute a spectrum of increasing strength and are not perfectly discrete." *Id.*

Fanciful and arbitrary marks are considered the strongest or most distinctive marks. *See id.*; *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1117 (6th Cir. 1996); *Daddy's Junky*, 109 F.3d at 280. "A fanciful mark is a combination of letters or other symbols signifying nothing other than the product or service to which the mark has been assigned (*e.g.*, Exxon, Kodak)." *Little Caesar Enters., Inc. v. Pizza Caesar, Inc.*, 834 F.2d 568, 571 (6th Cir. 1987) (citation and quotation omitted). "An arbitrary mark has a significance recognized in everyday life, but the thing it normally signifies is unrelated to the product or service to which the mark is attached (*e.g.*, Camel cigarettes or Apple computers)." *Id.* (citation and quotation omitted). In this regard, encroachment on a strong mark tends to produce the greatest likelihood of confusion. *See id.* Alternatively, "[s]uggestive and descriptive marks either evoke some quality of the product (*e.g.*, Easy Off, Skinvisible) or describe it directly (*e.g.*, Super Glue)." *Id.* (quotation omitted). "Such marks are considered weaker, and confusion is said to be less likely where weak marks are involved." *Id.* (quotation omitted).

After placing the mark into one of the four categories, we then analyze several other considerations to determine the strength of the plaintiff's mark, such as (1) the existence of similar third-party registrations, (2) the incontestability of the mark, and (3) the degree of consumer recognition of the mark. *See Daddy's Junky*, 109 F.3d at 280–82.

---

**5**The Lanham Act offers protection against infringement of both registered and unregistered marks and the analysis for distinctiveness is the same. *See DeGidio*, 355 F.3d at 509–10.

a. Whether the Trademarks are Generic, Descriptive, Suggestive, or Fanciful or Arbitrary

As to the registered trademarks, the lowercase "b" of Bliss's logo appears to be arbitrary as it has no inherent connection to the sale of children's clothing. *See id.* at 281 (finding the marks "Daddy's Junky Music Store" and "Daddy's" to be arbitrary marks because, "although consisting of words with recognized meaning in everyday speech, [they did] not have any inherent connection with the sale of musical instruments[]"). In this regard, the lowercase "b" of the logo is inherently distinctive and warrants the heaviest weight. *See Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210–12 (2000) (holding that fanciful, arbitrary, and suggestive marks are inherently distinctive); *Daddy's Junky*, 109 F.3d at 280 (fanciful or arbitrary are the strongest and most distinct of the four categories or marks).

The same may be said of the unregistered mark containing the lowercase "b" that includes the color bliss Blue with the words "bella bliss" under it. We have already determined that the lowercase "b" is inherently distinctive, and the words "bella bliss" likewise have no inherent connection to children's clothes. *Daddy's Junky*, 109 F.3d at 281. Yet Latham disputes that the logo's color can be part of the mark's distinctiveness when considering the mark's strength. But what Bliss seeks to protect is not merely the color bliss Blue, but the color as it is specifically used in the unregistered mark. Color may feature as a component of a trademark, especially where that color can limit the scope of the mark. *See, e.g.*, *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 703 F. Supp. 2d 671, 683, (W.D. Ky. 2010) (finding that a claim that marks were similar based on a red wax drip—though the color was not specified in the protected trademark—could proceed in part because the focus on color narrowed, rather than expanded, the plaintiff's trademark interests). Here, Bliss's unregistered mark similarly limits the scope of its mark. It does not encompass *every* use of "b" and "bella bliss," but it does encompass those things used in conjunction with the color bliss Blue. The unregistered mark, as a whole, is arbitrary and thus inherently distinctive.

b. The Existence of Third-Party Registrations, Incontestability of the Marks, and Degree of Consumer Recognition of the Marks

Bliss did not include in its amended complaint any facts concerning whether there are third-party registrations like the "b" or "bella bliss," so this consideration is neutral.

Regarding the incontestability of the marks, this consideration generally comes into play when the mark in question is merely descriptive, rather than fanciful or arbitrary. *See Daddy's Junky*, 109 F.3d at 282. Specifically, a mark becomes "incontestable" if it has not been "successfully challenged within five years of its registration." *Id.*; *see* 15 U.S.C. § 1065. Three of Bliss's four marks have been registered for over five years. Thus, the only relevant mark for purposes of contestability is Bliss's fourth pending trademark (i.e., Bliss's lowercase "b" logo in bliss Blue with the words "bella bliss" under it). The question of contestability is likely irrelevant here because "incontestable status benefits those marks which otherwise would lack inherent strength, i.e., generic marks or descriptive marks without secondary meaning." *Daddy's Junky*, 109 F.3d at 282. As previously discussed, the components of Bliss's unregistered mark are arbitrary. Even if this mark was contestable, its contestability would not detract from the inherent strength of its components. *See id.* To the degree that contestability is at issue, it weighs in Bliss's favor.

For the degree of consumer recognition of the mark component, Bliss's amended complaint alleges that its logos have been commercially used throughout Kentucky and the United States for years and, when combined with Bliss's "extensive use and advertisement expenditures," have achieved "substantial consumer recognition." R. 11, PageID 431, 433. Latham does not appear to contest Bliss's allegations regarding the degree of consumer recognition of Bliss's logo.

In sum, the strength-of-the-senior-mark factor weighs in Bliss's favor.

ii.     Relatedness of the Goods

"[I]f the parties compete directly by offering their goods or services, confusion is likely if the marks are sufficiently similar[.]" *Daddy's Junky*, 109 F.3d at 282. Bliss and Latham are direct competitors. They both sell children's clothing. Latham's founder was one of Bliss's founders and appears to have continued in the same business with Latham as she had with Bliss. This factor thus weighs in Bliss's favor.

### iii.    Similarity of the Marks

The similarity of the relevant marks "is a factor of considerable weight." *See Daddy's Junky*, 109 F.3d at 283.  While a side-by-side comparison is helpful for reference purposes, "[i]t is axiomatic in trademark law that 'side-by-side' comparison is not the test." *Wynn Oil Co. v. Thomas* ("*Wynn I*"), 839 F.2d 1183, 1187 (6th Cir. 1988) (quoting *Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817, 822 (9th Cir. 1980)).  Instead, we must determine "whether a given mark would confuse the public when viewed alone, in order to account for the possibility that sufficiently similar marks 'may confuse consumers who do not have both marks before them but who may have a general, vague, or even hazy, impression or recollection of the other party's mark.'" *Daddy's Junky*, 109 F.3d at 283 (quoting *Wynn I*, 839 F.2d at 1188).  In this regard, we "must view marks in their entirety and focus on their overall impressions, not individual features." *Id.*

Latham (and the dissent) argues that its logos are so inherently distinct from Bliss's logo that no reasonable consumer would ever confuse them.  Bliss's amended complaint includes a convenient side-by-side comparison of the logos in question. *See supra* III.A.  Comparing the logos next to each other, Latham is correct that the logos share no words or homophones.  But the letter "e" in Latham's "Le" logo is tucked into the uppercase "L" in a manner that tracks the shape of Bliss's logo.  Similarly, the words "little english" are underneath Latham's "Le" logo just as the words "bella bliss" are underneath Bliss's lowercase "b" logo.  Lastly, the colors appear nearly identical.

Of course, these similarities are not per se evidence of trademark infringement such that summary judgment would be appropriate.  But they are also not per se evidence of the converse, especially at the motion-to-dismiss stage.  This factor thus weighs slightly in Bliss's favor.

### iv.    Evidence of Actual Confusion

"Evidence of actual confusion is undoubtedly the best evidence of likelihood of confusion." *Wynn I*, 839 F.2d at 1188.  But "[d]ue to the difficulty of securing evidence of actual confusion, a lack of such evidence is rarely significant[.]" *Daddy's Junky*, 109 F.3d at 284.  As such, a plaintiff need not identify specific instances of actual confusion to state a trademark

infringement claim.  *See, e.g.*, *Innovation Ventures, LLC v. N2G Distrib., Inc.*, 763 F.3d 524, 536 (6th Cir. 2014) ("Plaintiff did not need to show actual confusion to prevail at trial.").

The amended complaint does not allege instances of actual customer confusion between the parties' marks, but it does include numerous instances of consumers identifying little english products as bella bliss products on social media and of consumers who have attempted to return little english products to Bliss, "mistakenly believing them to be bella bliss [p]roducts."  R. 11, PageID 465; R. 11-10; R. 11-11; R. 11-12.  Most telling is the example of a customer attempting to return a Latham product to Bliss.  Although Latham's logo is on the clothing, the customer mistook the article as originating from Bliss.

Because evidence of actual confusion is not required to properly plead a claim for trademark infringement, this factor is neutral.

> ### v.    Marketing Channels Used

This factor considers "how and to whom the respective goods or services of the parties are sold."  *Champions Golf*, 78 F.3d at 1120 (quoting *Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1110 (6th Cir. 1991)).  Bliss and Latham sell similar products (children's clothing) to similar customers (families purchasing children's clothing) in similar ways (social media/print).  In the amended complaint, Bliss alleges that it "allocates extensive resources to marketing and advertisement, sending out a substantial number of catalogs nationwide" and using several other forms of print marketing.  R. 11, PageID 424.  Bliss also alleges that the parties both use social media to market their products and that Latham targeted Bliss's customers and social-media subscribers by sending them friend requests on Facebook to divert them from Bliss to Latham.

Latham does not appear to dispute the similarity of marketing channels used by the parties.  Notably, "[s]imultaneous use of the Internet as a marketing tool exacerbates the likelihood of confusion, given the fact that entering a web site takes little effort—usually one click from a linked site or a search engine's list; thus, Web surfers are more likely to be confused as to the ownership of a web site than traditional patrons of a brick-and-mortar store would be of

a store's ownership." *Audi AG v. D'Amato*, 469 F.3d 534, 544 (6th Cir. 2006) (citation and quotation omitted).

This factor weighs in Bliss's favor.

### vi.    Likely Degree of Purchaser Care

This factor considers the average care a consumer exhibits when making a purchase. "The degree of customer care—*i.e.*, how carefully a consumer selects a particular good or service—may also affect the possibility of consumer confusion." *Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 796–97 (6th Cir. 2015). "In most cases, customers are held to the standard of a 'typical buyer exercising ordinary caution' [as] confusion is less likely in cases involving expensive or unusual services or unusually skilled buyers." *Id.* at 797 (quoting *Homeowners*, 931 F.2d at 1111). For example, "home buyers will display a high degree of care when selecting their real estate brokers, whereas consumers of fast-food are unlikely to employ much care during their purchases." *Daddy's Junky*, 109 F.3d at 285 (citation omitted).

"The effect of purchaser care, although relevant, will be less significant than, or largely dependent upon, the similarity of the marks at issue." *Id.* at 286. For example, if the marks in question are found to be similar, "then purchaser care will decrease the likelihood of confusion only minimally" because the care and skill the consumer would have used to purchase the product will not have necessarily extended to the consumer's decision regarding which retailer to buy from. *Id.*

As discussed above, we find that the parties' logos are similar for purposes of determining the likelihood of confusion. *See supra* Section III.A.2.iii. As such, the relevance of this factor is likely of minimal weight. *See Daddy's Junky*, 109 F.3d at 286; *Champions Golf*, 78 F.3d at 1121. Nevertheless, Bliss's amended complaint is silent about this factor. As such, having failed to articulate the likely degree of purchaser care, we find that this factor weighs in Latham's favor.

vii.    Latham's Intent in Selecting Its Marks

Intent is key.  "If a party chooses a mark with the intent of causing confusion, that fact alone may be sufficient to justify an inference of confusing similarity."  *Homeowners*, 931 F.2d at 1111.  "Direct evidence of intentional copying is not necessary to prove intent."  *Daddy's Junky*, 109 F.3d at 286.  "Rather, the use of a contested mark with knowledge of the protected mark at issue can support a finding of intentional copying."  *Id.*

Bliss alleges that Latham altered its logos to deliberately make them more like Bliss's.  Bliss illustrated how Latham's logo changed over time to resemble Bliss's more closely, including in its amended complaint Latham's original logo and a side-by-side comparison of Bliss's logo to Latham's revised and current logo.  *See supra* Section III.A.  While Bliss's intentional infringement evidence appears to be circumstantial at this point, "intent to infringe can be shown by circumstantial evidence."  *Wynn Oil Co. v. Am. Way Serv. Corp.* ("*Wynn II*"), 943 F.2d 595, 603 (6th Cir. 1991); *see Champions Golf*, 78 F.3d at 1121.

This factor weighs in Bliss's favor.

viii.    The Likelihood of Expansion of the Product Lines

We must also consider possible future expansion of the businesses at issue.  "[A] strong possibility that either party will expand [its] business to compete with the other or be marketed to the same consumers will weigh in favor of finding that the present use is infringing."  *Homeowners*, 931 F.2d at 1112 (citation and quotation omitted).  But, as with the intent and actual-confusion factors, the likelihood of expansion factor is more important in instances where the plaintiff has provided evidence in support of the factor, as opposed to instances where no likelihood of expansion is evident.  *See Daddy's Junky*, 109 F.3d at 287; *Champions Golf*, 78 F.3d at 1112.  Bliss alleges no facts in the amended complaint regarding this factor.  This factor is neutral.

*            *            *

In sum, five of the eight *Frisch* factors weigh in favor of finding a likelihood of confusion.  Two of the factors are neutral.  And one factor weighs in Latham's factor.  As a

result, we find that Bliss has plausibly alleged a likelihood of confusion and, as such, Bliss's amended complaint states a claim for federal trademark infringement.  *See Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 679 F.3d 410, 424 (6th Cir. 2012) (finding a likelihood of confusion where four *Frisch* factors favored the plaintiff, one factor favored the alleged infringing party, and the other three factors were neutral); *Gen. Motors Corp. v. Keystone Auto. Indus., Inc.*, 453 F.3d 351, 358 (6th Cir. 2006) (finding a likelihood of confusion where four *Frisch* factors favored the plaintiff, two favored the alleged infringing party, and the remaining two factors were inapplicable).

B.

*Bliss's Trade Dress Infringement Claim*.    Unlike a trademark, a trade dress is not explicitly defined in the Lanham Act.  *See Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP*, 423 F.3d 539, 547 (6th Cir. 2005).  But the Supreme Court has recognized trademark and trade dress as two distinct concepts under the Act and a party may independently infringe both.  *See Wal-Mart*, 529 U.S. at 209–10.

"Trade dress refers to the image and overall appearance of a product.  It embodies that arrangement of identifying characteristics or decorations connected with a product, whether by packaging or otherwise, that makes the source of the product distinguishable from another and promotes its sale."  *Groeneveld*, 730 F.3d at 503 (alteration in original) (quoting *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. 2002)).  For example, trade dress might include the outer shape and design of a Gibson guitar; the arrangement, content, and layout of an Abercrombie & Fitch catalogue; or the decoration, vibe, and motif of a Mexican restaurant.  *See id.*  In this regard, trade dress generally falls into one of three categories—product design, product packaging, or *tertium quid* (i.e., an indeterminate third catch-all category).  *See id.*

To establish a trade dress infringement claim, a plaintiff must show that: (1) the trade dress is nonfunctional; (2) the trade dress is distinctive in the marketplace and has acquired secondary meaning, thereby indicating the source of the goods; and (3) the trade dress of the accused product is confusingly similar.  *See Gen. Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d

405, 414 (6th Cir. 2006) (citation omitted). Bliss contends that Latham infringed on Bliss's trade dresses with regard to Bliss's "Mirabelle" swimsuit, jungle print design, gingham color-blocked swim trunks, "Shep Bubble" jumper, "Sailor Bubble" design, "Eloise" blouse and jumper, and bliss Blue color.

Whether Bliss has stated a trade dress infringement claim turns on whether it has alleged facts establishing that its asserted trade dresses are nonfunctional. A feature is functional if: (1) "it is essential to the use or purpose of the [device] or if it affects the cost or quality of the [device]," or (2) the "exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage." *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165 (1995) (citation and quotation omitted); *see Abercrombie*, 280 F.3d at 641. At times, the first definition has been referred to as "traditional functionality" and the second as "aesthetic functionality." *Abercrombie*, 280 F.3d at 641 (discussing the Supreme Court's definition of functionality in the trade dress context). For example, the Supreme Court has held that the dual-spring design employed at the base of road signs to make them withstand strong wind gusts is functional. *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 30–32 (2001).

We need not decide which functionality definition applies. Under either definition, Bliss has failed to allege any facts in its amended complaint to show that its asserted trade dresses are nonfunctional. Therefore, the district court did not err in dismissing Bliss's trade dress infringement claim.

Bliss's argument that its clothing trade dresses were traditionally nonfunctional because they are artistic features resulting from artistic choices is insufficient to satisfy the applicable standards for assessing functionality. *See Abercrombie*, 280 F.3d at 641 (stating that an asserted trade dress is functional if it is either traditionally or aesthetically functional).

Concerning its bliss Blue trade dress, Bliss argues that "the only reasonable inference" that we could draw from its amended complaint is that bliss Blue is a nonfunctional trade dress. Ultimately, Bliss bears the burden of pleading and proving nonfunctionality. *See Gen. Motors*, 468 F.3d at 416–17 (finding that the district court erred when it treated the element of functionality as a defense because it improperly shifted the burden of proving the element onto

the defendant). Bliss needed to allege sufficient factual material to "draw the reasonable inference" that bliss Blue was nonfunctional. *Iqbal*, 556 U.S. at 678. The amended complaint alleges no facts regarding the nonfunctionality of bliss Blue. *See id.* at 677–78.

## C.

*Bliss's Kentucky Common Law Trademark Infringement Claim*. The analysis of a claim for federal trademark infringement and trademark infringement under Kentucky law is functionally the same. *See Oaklawn Jockey Club, Inc. v. Ky. Downs, LLC*, 687 F. App'x 429, 433–34 (6th Cir. 2017) ("[C]ourts apply the same analysis for Kentucky common law trademark infringement and unfair competition as they do for federal claims of trademark infringement[.]" (citation and quotation omitted)); *Colston Invest. Co. v. Home Supply Co.*, 74 S.W.3d 759, 766–67 (Ky. Ct. App. 2001) (holding that, under Kentucky law, the "test of infringement is the likelihood of confusion" (emphasis removed)). Thus, because Bliss has stated a claim for federal trademark infringement, we find that Bliss has also stated a claim for trademark infringement under Kentucky common law.

## D.

*Attorney's Fees*. Where a plaintiff fails to establish a claim for trademark or trade dress infringement under the Lanham Act, a court may award attorney's fees to the defendant in "exceptional cases." 15 U.S.C. § 1117(a). An "exceptional" case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014); *Slep-Tone Ent. Corp. v. Karaoke Kandy Store, Inc.*, 782 F.3d 313, 318 (6th Cir. 2015). In particular, "exceptionally meritless claims" or claims brought in "bad faith" warrant an award of attorney's fees. *Octane Fitness*, 572 U.S. at 555. Courts make this determination on a case-by-case basis considering the totality of the circumstances. *See id.* at 554; *Evoqua Water Techs., LLC v. M.W. Watermark, LLC*, 940 F.3d 222, 235 (6th Cir. 2019).

Under § 1117(a), attorney's fees are awarded to prevailing defendants only in rare circumstances based on the district court's holistic consideration of the facts and circumstances

particular to the case. *See Octane*, 572 U.S. at 554–55. The district court used the correct legal standard to assess Latham's claim for attorney's fees under § 1117(a). It found that Bliss's federal trademark and trade dress claims did not fall into the basket of exceptional cases justifying an award of attorney's fees because Bliss's claims were neither "exceptionally meritless" nor filed in bad faith. We agree. We found above that Bliss stated a claim for trademark infringement. There is, of course, no basis for an award of attorney's fees to Latham for a claim that we have determined should proceed in the district court.

Regarding Bliss's trade dress claim, the district court did not abuse its discretion in denying Latham attorney's fees. Latham failed to show that the trade dress claim was exceptionally meritless or brought in bad faith. A prevailing defendant is not entitled to attorney's fees under § 1117(a) simply because the plaintiff's claims were unsuccessful. "[W]here a plaintiff sues under a colorable, yet ultimately losing, argument, an award of attorney's fees is inappropriate" under § 1117(a). *Eagles, Ltd. v. Am. Eagle Found.*, 356 F.3d 724, 728 (6th Cir. 2004) (citation and quotation omitted). If a defendant could obtain attorney's fees every time that it successfully defended a federal trademark or trade dress infringement claim, "awards would be commonplace rather than exceptional." *See Premium Balloon Accessories, Inc. v. Creative Balloons Mfg., Inc.*, 573 F. App'x 547, 558 (6th Cir. 2014) (quotation omitted).

## IV.

For the foregoing reasons, we REVERSE the district court's dismissal of Bliss's claims for federal trademark infringement and trademark infringement under Kentucky common law, AFFIRM the district court's dismissal of Bliss's federal trade dress infringement claim, and AFFIRM the district court's refusal to award Latham attorney's fees under § 1117(a). The case is remanded for further proceedings consistent with this opinion.

—————————————

**CONCURRENCE IN PART/
DISSENT IN PART**

—————————————

LARSEN, Circuit Judge, concurring in part and dissenting in part. I begin with some points of agreement. I agree with the majority that we should affirm the district court's dismissal of Bliss's trade dress infringement claims. *See* Maj. Op. 18–20 (III. B). I would also affirm the district court's denial of Latham's request for attorney fees under 15 U.S.C. § 1117(a) because this is not an "exceptional" case. *See id.* at 20–21 (III. D). As to Bliss's trademark infringement claim, however, I cannot agree that Bliss has plausibly alleged a likelihood of confusion—the "touchstone of [trademark] liability." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997). Here, Latham's mark shares no common elements with any protected aspect of Bliss's mark, and in terms of overall impression, the marks are "clearly distinguishable." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 648 (6th Cir. 2002) (internal quotation mark and citation omitted). A "strong . . . impression of dissimilarity ordinarily receives great weight in determining the likelihood of confusion." *Id.* (internal quotation marks and citation omitted). And Bliss's weak allegations on the other *Frisch* factors cannot overcome the deficit. To send this case to discovery comes close to saying that every trademark infringement pleading survives. I do not understand that to be the law. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face—that is, more than a sheer possibility).

In reaching the opposite result, the majority analyzes the eight *Frisch* factors and concludes that more favor Bliss than Latham. But the factors "imply no mathematical precision." *Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991). And they do not bear equal weight. Instead, we have said that "the most important *Frisch* factors are similarity and strength of the mark." *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 679 F.3d 410, 424 (6th Cir. 2012) (internal quotation marks and citation omitted); *see also AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 795 (6th Cir. 2004) (explaining that the

similarity of the marks is given "considerable weight"). Those factors bear the most weight because the ultimate trademark question is whether the "defendant's designation will be confused with the plaintiff's trademark, such that consumers are mistakenly led to believe that the defendant's goods are produced or sponsored by the plaintiff." *Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753–54 (6th Cir. 1998).

I agree with the majority that Bliss's marks are strong. But Bliss's marks and Latham's share no protected features, and the overall appearance of the marks is decidedly different. When trademarks are "so clearly distinguishable" that no reasonable consumer could be confused, "a court may resolve the issue of . . . similarity as a matter of law." *Abercrombie*, 280 F.3d at 648 (internal quotation marks and citation omitted). And in such situations, the plaintiff will have a difficult time "prevailing on the seven other *Frisch*[] factors." *Id.* (calling the plaintiff's burden "effectively insurmountable"). Here, taking all the allegations in the complaint as true, Bliss's trademark infringement claim cannot survive.

*Strength of the Marks.* A mark's strength depends on "the interplay between conceptual and commercial strength." *Maker's Mark Distillery*, 679 F.3d at 419. I agree with the majority's conclusion that Bliss has strong marks, but it's important to explore just what the marks consist of, and why they are strong. First consider the registered mark, which consists of the lower-case stitched "b" alone. *See* Maj. Op. at 6 (displaying the registered mark). That "b" could not be protected if it were *just* a "b." *See Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 383 (2d Cir. 2005) (explaining that "[u]nshaded linear representations of common shapes or letters . . . are not protectable as inherently distinctive" and may be protected only upon a showing of secondary meaning). Instead, Bliss's "b" gains its protection because it is stylized. *See id.* ("[S]tylized letters or shapes are not 'basic,' and are protectable when original within the relevant market."). Bliss's "b" "has the appearance of being constructed out of . . . thread with the end of the thread at the top of the letter 'B' forming a smaller second . . . letter 'B' at a slight angle." *See* U.S. Registration No. 88900724; *see also* U.S. Registration Nos. 3321192, 3327352, 3469536. That stylized version of the lower-case "b" is what is protected.

Moving to the unregistered mark,[1] that mark again contains the stitched "b," sewn in "light blue" with the lower-case words "bella bliss" underneath, again in "light blue." *See* U.S. Registration No. 88900724. This mark is also distinctive because it contains the stitched "b," and because, as the majority explains, the words "bella bliss" have "no inherent connection to children's clothes." Maj. Op. at 12 (citing *Daddy's Junky Music*, 109 F.3d at 281). This mark is further limited by color. But it's important to note that the protected color is not "bliss Blue"— defined by Bliss in this litigation as "Pantone color 13-4220, Artic Paradise (alternative Pantone colors listed as 291 CP, 112-3 C, 442-U, and 115-4 U) ('bliss Blue')." Appellant Br. at 10 (quoting R. 11 Amended Complaint, PageID 433). Bliss could have applied for that particular Pantone shade in its trademark registration. *See* 1 McCarthy on Trademarks and Unfair Competition § 7:45.70 (5th ed.) (citing T.M.E.P. § 808.02 (Oct. 2018 ed.) (explaining that a Pantone designation can be used to define a color in a registration "because greater precision in identifying the color may be critical in accurately describing the mark")). But Bliss's application (and ultimate approval) lists only the more generic "light blue." *See* U.S. Registration No. 88900724 ("The color(s) light blue is/are claimed as a feature of the mark.").

In any event, the majority opinion rightly explains that Bliss has not adequately alleged that "bliss Blue" has acquired secondary meaning. Maj. Op. at 7 n.4. And it is also right to note that Bliss seeks to protect the light blue color only "as it is specifically used in the unregistered mark." *Id.* at 12. Bliss describes that use very specifically indeed—"light blue letter 'B' that has the appearance of being constructed out of light blue thread with the end of the thread at the top of the letter 'B' forming a smaller second light blue letter 'B' at a slight angle and the wording 'BELLA BLISS' appearing in light blue beneath the large letter 'B.'" U.S. Registration No. 88900724; *see also* R. 11 Amended Complaint, PageID 430 ("The mark features a lowercase b in light blue stitching with a script 'b' and the words 'bella bliss' in light blue and all lowercase lettering below the 'b.'"). So, as the majority explains, Bliss's unregistered mark "does not encompass *every* use of 'b' and 'bella bliss,' but it does encompass those things used" in the

---

[1]It appears that Bliss's light blue mark has now been registered but was not registered at the time the suit was filed. *See* U.S. Registration No. 88900724 (indicating the mark is registered and live). For ease, I will continue to refer to this mark as the "unregistered" mark, as does the majority opinion.

places specified in Bliss's trademark application and its amended complaint, "in conjunction with the color bliss [or light] Blue." Maj. Op. at 12.

Relatedly, Bliss's unregistered mark does not encompass every competing use of "light blue" in marks for children's clothes. Such protection would be nearly impossible to get. *See* McCarthy § 7:40 ("To the author's knowledge, *no court has granted a company the exclusive right to use a color per se*, apart from being defined as the coloration of a specific product, shape or design." (emphasis added)). Light blue is a staple color of children's fashion, and hence of its marketing; so to give Bliss monopoly use of the color "would significantly hinder competition" in the children's clothing market. *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 170 (1995) (quoting Restatement (Third) of Unfair Competition § 17 cmt. *c* (1993)). That's why "[t]he Patent and Trademark Office will not register a color in the abstract and requires a drawing showing how the color will be applied to a product or package." McCarthy § 7:40. That is also why Bliss's color protection extends no further than "light blue" *as applied to* the stitching in its stylized "b" and in the words "bella bliss." With this understanding, I agree with the majority's conclusion that Bliss's marks are strong.

*Similarity of the Marks.* I cannot agree, however, that the marks are similar. In assessing the likelihood of confusion, we have accorded "considerable weight" to the similarity of the marks. *Daddy's Junky Music*, 109 F.3d at 283. When assessing similarity, we "view marks in their entirety and focus on their overall impressions, not individual features." *Id.* But so long as the overall impression of the marks is kept firmly in view, it is appropriate to "assign more weight to the dominant features of the marks." *AWGI, LLC v. Atlas Trucking Company, LLC*, 998 F.3d 258, 266 (6th Cir. 2021). That's because those features are likely to "make the greatest impression on the ordinary buyer." McCarthy § 23:42; *see also In re Electrolyte Labs., Inc.*, 929 F.2d 645, 647 (Fed. Cir. 1990) ("More dominant features will, of course, weigh heavier in the overall impression of a mark."). And "naturally the commonalities of the respective marks must be the point of emphasis." *AutoZone*, 373 F.3d at 795.

Often, as here, the competing marks will consist of "both designs and words." McCarthy § 23:47. When such marks employ similar words, but disparate designs (or vice versa), "the matter of which of the two features dominates the marks is usually controlling in determining

[the] likelihood of confusion." *Id.* Some courts take the view that the "verbal portion" of a word and design mark dominates because it is "most likely to indicate the origin of the goods to which it is affixed." *In re Viterra Inc.*, 671 F.3d 1358, 1362 (Fed. Cir. 2012) (quoting *CBS Inc. v. Morrow*, 708 F.2d 1579, 1581–82 (Fed. Cir. 1983)). These courts reason that the "literal component of brand names likely will appear alone when used in text and will be spoken when requested by consumers." *Id.* at 1366; *see also In re Ox Paperboard, LLC*, No. 87847482, 2020 WL 4530517, at *5 (T.T.A.B. Aug. 5, 2020) (explaining that the literal portion is normally assigned more weight because it is "usually more likely to be impressed upon a purchaser's memory" than the design portion). But sometimes the design element will dominate, especially when it is "more conspicuous or well known to the purchasing public." *Ass'n of Co-op. Members, Inc. v. Farmland Indus., Inc.*, 684 F.2d 1134, 1141–42 (5th Cir. 1982). Here, there is no need to choose between the dominance of words or design because Latham's mark shares *no* "commonalities" with *any* protected aspect of Bliss's mark.

We assess similarity by "examin[ing] the pronunciation, appearance, and verbal translation" of the marks. *Autozone*, 373 F.3d at 795 (quoting *Daddy's Junky Music*, 109 F.3d at 283). Or, as other courts have put it, we test the similarity of the marks based on "sight, sound, and meaning." *Lodestar Anstalt v. Bacardi & Co. Ltd.*, 31 F.4th 1228, 1260 (9th Cir. 2022); *Boston Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d 1, 24 (1st Cir. 2008). Here, the marks are not similar along even one of these dimensions, or in their overall impression.

Start with Latham's word mark. Bliss says that the word mark infringes because it uses "a similar lowercase lettering pattern," in the "exact shade of bliss Blue." R. 11 Amended Complaint, PageID 441 (emphasis omitted). What this allegation ignores is: that Latham's mark spells out *entirely different words* ("little english" not "bella bliss" or anything close to it); in an *entirely different font* (Bliss's lower-case letters are sans serif and Latham's letters are either serif or script). And, of course, Bliss does not have blanket trademark protection for "bliss Blue." It has protection for "light blue" in connection with its stylized "b" and the words "bella bliss." To say that Latham's word mark infringes Bliss's would be to give Bliss a right to exclude all children's clothing brands from using "light blue" and lower-case letters to spell *any* word in *any* font. Consider, for example, the famous Carter's brand of children's clothing. Its logo spells out

the word "carter's" in a lower-case sans-serif font, either in light blue letters, or in white letters on a light blue background. But no one would think that the more-famous Carter's has a viable claim against Bliss because the words "carter's" and "bella bliss" are wildly distinct. So too with "bella bliss" and "little english." *See Haagen-Dazs, Inc. v. Frusen Gladje Ltd*., 493 F. Supp. 73, 75 (S.D.N.Y. 1980) ("The names in issue, Haagen-Dazs and Frusen Gladjee, are clearly distinguishable. . . . [B]oth names contain two words to identify an ice cream product, but so do the names 'Louis Sherry' and 'Dolly Madison.'").

Now consider whether Latham's "Le logo" resembles Bliss's unregistered logo—the light blue stitched "b" with the light blue words "bella bliss" underneath. Latham's logo does not use a "b" at all—it features a capital "L" and a lower-case "e," in white lettering, with the words "little english" underneath. As the majority admits, "the logos share no words or homophones." Maj. Op. at 14. They don't share initial letters either; and they don't rhyme. So there goes similarity of "sound." The words also share no "meaning."

How about "sight?" Here again, there are no common protected features, and the overall appearance of the marks differs. Bliss's mark is minimal and modern; Latham's is more ornate and vintage. A dominant feature of Bliss's mark is its stitched "b." Meanwhile, as noted above, Latham's mark does not include a "b" at all. And Latham's "L" and "e" are not "stitched" like Bliss's "b." Finally, the words "little english" appear in a different font and color (white lower-case letters with a gold or brown shading at the edges).

Adding to the disparity are the extra design features in the "Le logo," which are not mentioned in the majority opinion. The "Le logo" features criss-crossed sheaves of golden wheat. And the "Le" with "little english" beneath it is surrounded by a golden "picture frame" with blue polka-dot detail—one version oval-shaped, the other square. In the square "Le logo," the words "classic children's collection" appear in a goldish-brown font. None of these elements has even an arguable companion in the simple Bliss marks.

Only the "Le logo" background color—light blue, in a shade resembling "bliss Blue"—is an arguably similar element. But the background color, by itself, cannot do the work here. *See Sun Banks of Fla., Inc. v. Sun Fed. Sav. & Loan Ass'n*, 651 F.2d 311, 317–18 (5th Cir. 1981)

(concluding that the marks "Sun Banks" and "Sun Federal" were visually dissimilar even though both marks were orange). The majority rightly notes that Bliss has not adequately alleged secondary meaning in the particular shade of light blue it calls "bliss Blue." Maj. Op at 7 n.4. Bliss did not seek blanket trademark protection for either light blue or "bliss Blue," and even if it had, it would not have received it. *See* McCarthy § 7:40; *see also* 37 C.F.R. § 2.52(b)(1).

What Bliss sought was trademark protection in a lower-case "b" "stitched in light blue" and the words "bella bliss" also in "light blue." Latham's use of a light blue backdrop for different letters ("L" and "e") and different words ("little english"), in a different font, surrounded by a gold picture frame and accompanied by criss-crossed sheaves of golden wheat does not infringe this mark. To hold otherwise would be to give Bliss trademark protection in a "'floating color': that is, a color per se, divorced from the coloration of a specific product or container." McCarthy § 7:40. Such protection is unknown to trademark law, *id.*, especially where, as here, the color (light blue) bears a strong association with the market (children's clothes). *See Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 874 (8th Cir. 1994) ("The use of red or green . . . on the package of a product intended for sale in connection with the Christmas season . . . is clearly not protectable because such colors are traditionally used for products relating to Christmas and are therefore neither distinctive nor nonfunctional."). In sum, the two marks are so dissimilar that no one could be confused.

*Intent*. The majority concludes that three other factors favor Bliss: the relatedness of the goods, the marketing channels used, and Latham's intent. *See* Maj. Op. at 13, 15, 17. I have no quarrel with the majority's assessment of the first two, though I don't find them sufficient to "nudge[] [Bliss's] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). I disagree, however, on the question of intent. We have said that "[i]ntent is relevant because purposeful copying indicates that the alleged infringer, who has at least as much knowledge as the trier of fact regarding the likelihood of confusion, believes that his copying may divert some business from the senior user." *Daddy's Junky Music*, 109 F.3d at 286. But the only fact alleged to show Latham's intent is that Latham progressively altered its logo in ways that brought the Latham logo closer to Bliss's. Bliss alleges, for example, that Latham's 2005 logo used a "darker shade of blue and featured heavy notes of red,"

but its new logos "deliberately utilize[] bliss Blue."  R. 11 Amended Complaint, Page ID 440–41.  Bliss also alleges that Latham originally used "traditional capitalization or use of small capitalization on its website" but its "script logo" now uses a "lowercase lettering pattern" that is "similar" to Bliss's.  *Id*. at 441.  These allegations are insufficient to show "purposeful copying." *Daddy's Junky Music*, 109 F.3d at 286.

First, it's hard to see how Latham's "script logo" uses a "lowercase lettering pattern" that is "similar" to Bliss's.  To state the obvious, Latham's is "script," but Bliss's is not.  As for the use of lower-case letters, Latham's original logo, as depicted in the complaint and reproduced in the majority opinion, spelled out "little english" and "classic children's collection" in lower-case letters, just as it does today.  *See* Maj. Op. at 7.  And Latham's new logos retain many other prominent features of its old logo as well: for example, the criss-crossed sheaves of golden wheat and the golden polka-dot frame, none of which has an arguable analog in Bliss's minimalist mark.  So while it is true, based on the allegations in the complaint, that Latham's mark changed over time, the alleged changes do not support a reasonable inference of intentional copying; the marks never got close enough to be even remotely similar.  Furthermore, we have said that even "a finding of 'bad-faith intent to infringe upon another mark may not increase the likelihood of confusion if the other seven factors suggest that confusion is improbable." *Progressive Distrib. Servs., Inc*. v. *United Parcel Serv., Inc.*, 856 F.3d 416, 435–36 (6th Cir. 2017) (citing *AutoZone*, 373 F.3d at 799).  That is the case here.  *See also* McCarthy § 23:107 ("If, due to weakness of the mark and differences in the marks and goods, there is no infringement, then the question of defendant's good or bad intentions loses importance.").

\* \* \*

The marks, considered in their entireties, are so dissimilar that they cannot plausibly create a likelihood of confusion.  I would, therefore, affirm the district court's judgment as it relates to Bliss's trademark infringement claims.  And because the same test governs Bliss's claims for federal false designation of origin, federal unfair competition, and unfair competition under Kentucky common law, *see Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006); *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 703 F. Supp. 2d 671, 687 n.17 (W.D. Ky. 2010), I would affirm the district court's dismissal of these claims as well.